[*Special Term, March,* 1870.]

JAMES R. MILLER ET AL., TAX-PAYERS OF THE CITY OF CIN-
CINNATI, BY THE SOLICITOR, *v.* HENRY PEARCE, HENRY KESS-
LER, JOHN SIMPKINSON, TRUSTEES OF THE WATER-WORKS,
AND MICHAEL BURNS.

Where the trustees of the water-works of Cincinnati advertised for a
quantity of building stone, to be delivered at the reservoir, and ac-
cepted a bid proposing to furnish the building stone, quarry it on the
ground of the city, and to grade the city's ground with the excavated
earth, as the trustees might require :

*Held,* that it appearing that the grading was an important part of the
work, the advertisement omitting it was not sufficient, and did not
justify the contract which included it.

*Held,* also, that the requisition of the statute, that "said trustees, before
entering into any contract for work to be done, the estimated cost
of which shall exceed five hundred dollars, shall cause at least two
weeks' notice to be given in one or more daily newspapers of general
circulation in the corporation," is a condition precedent to contracting,
and that the contract could not be made until at least two weeks after
the first publication.

That the court may allow a reasonable fee to counsel employed by tax-
payers, with consent of the city solicitor, to prosecute the application
for an injunction to restrain the trustees from making the contract.

THIS action was brought to enjoin the performance of a
contract entered into between the city, through the trustees
of the water-works, and Michael Burns, by which he was
to furnish and deliver to the city water-works, at the site
of the new reservoir in the Garden of Eden, 16,500 perches
of stone of the kind and quality specified, at $2.18 per
perch, and by which it was also agreed that Burns might
quarry stone in the Garden of Eden grounds, at such
points and localities and in manner and form as might be
required by the board of trustees of the city water-works,
and that the said Burns should remove and deposit the
earth in such places as might be required by the engineer
in charge, by order of the board of trustees.

The petition claims that this contract is illegal: 1. Be-

cause the contract includes work not named.in the advertisement; 2. Because the contract was procured by fraud in the officers of the city, by communicating to some and withholding from others the fact, that the stone might be quarried in the Eden Park ground; 3. And because the statute was not complied with by advertising two weeks for proposals.

The advertisement was published.on the 24th of October, 1869, and was in these words, viz:

"Sealed proposals will be received at this office up to 12 o'clock M., on Thursday, the 4th day of November next, to furnish these works, delivered in the Garden of Eden, at the site of the new reservoir, range, building, and concrete stone, in accordance with plans and .specifications to be seen at the office on the grounds. No bids will be considered unless the engineer in charge has been notified in time to inspect and examine the quarry from which said stone are to be furnished.

"By order of the board, who reserve the right to reject any or all bids.

[Signed,]          "JOSEPH P. MEYER, *Sup't.*"

The specifications, to which reference is had in the advertisement, give the shape, size, and quality of the stone, and when to be delivered and how paid for, but make no allusion to the quarrying being done in the Eden Park grounds, or to any grading thereof.

Four bids were put in; one by Withenbury, to furnish the stone from a quarry named, which was outside the park, but delivered at the new reservoir at $2.87½ per perch; one by Barker to quarry the stone in the park grounds, and spread the earth as directed by the engineer, at $2.25 per perch; one by Grower, to quarry and deliver on the ground the stone at $1.80 per perch, provided the quarrying should be done on the park grounds, and the road should be kept in order without expense to him, and he should have nothing to do with the grading; and one by the defendant Burns, "to quarry and deliver the stone

on the place at the new reservoir in the Garden of Eden, at $2.18—if allowed to quarry the stone on the grounds in the Garden of Eden, will remove the earth and put it in such places as the superintendent may direct."

The contract was awarded to Burns on the 4th of November, 1869, providing that "he might quarry on the Eden Park grounds, and should remove and deposit the earth in such places as should be required by the engineer of the water-works."

*O. J. Dodds,* for plaintiffs.

*Hoadly & Johnson,* for Burns.

*Walker & O'Connor,* for Trustees of Water Works.

TAFT, J.   Evidence has been introduced to show that the superintendent and other officers connected with the water-works represented to some bidders that they would be permitted to quarry the stone in the park, and to others that they would not.   The testimony was all heard—that proving declarations of the superintendent and engineer, as well as that proving those of the trustees themselves.

The declarations of the superintendent and engineer, and those of Mr. Peter, an officer in the office, were objected to as incompetent.

I have concluded to lay all that class of testimony entirely out of the case.   I am satisfied that there has been no fraudulent or unfair intention on the part of the trustees of the water-works; and I think that the superintendent and engineer, and Mr. Peter, may be fairly acquitted of any purpose of misrepresenting the work to be done, or of withholding information which they could, or should have given.   If there be any discrepancies in their statements made at different times, or any want in explanations, they may more easily be accounted for by the uncertainty in their own minds on the subject, and by the nature of the

advertisement itself, than by supposing there was any purpose of deception. It does not appear that the trustees had actually determined where the quarrying should be done. I lay aside, therefore, all the verbal representations, whether made by the trustees themselves, or by those acting under their authority. I am satisfied that they furnish no ground to impeach this contract.

But there are two objections to this contract which I think are fatal to it. The first is, that this contract includes a large amount of work which has never been advertised, viz: the grading of the grounds in the park. This appears by the testimony to be a substantial and valuable part of the contract.

There was a difference between the bid of Grower and that of Burns, of about $7,000 in favor of Grower, as to price; and yet the engineer is of the opinion that the bid of Burns was better for the city than that of Grower, because Burns undertakes to perform the job of grading the grounds, *for which there was no advertisement*, and which was not mentioned in the specifications. The entire cost of the job, according to the bid of Mr. Burns, would be $35,970. The value of this grading is estimated at not less than $10,000 by Mr. Earnshaw, the engineer. This may be a large estimate. But there is no doubt, from the testimony, that the removal of the earth displaced by quarrying the stone, and depositing it where it is wanted, is an important feature of the contract, a feature which was left out of the advertisement.

The omission from the advertisement and specifications of so important a part of the work, renders it very difficult, if not impossible, to ascertain who is the lowest bidder. The advertisement and specifications in such a case should furnish some data or estimates by which the bids can be tested, so as to ascertain which is the best. There were no such data as to this grading. I do not think that the court can substitute its own opinion for that of the board of trustees, in determining which is the lowest bid. But it

may consider whether the proceedings of the board have been such as to furnish a reliable standard for forming an opinion.

I should not be willing to be too minute in criticising a contract made under an advertisement for bids. There may, undoubtedly, be things incidental to the principal things, which would be properly included in the contract, though not particularized in the advertisement, nor even mentioned in the specifications referred to in the advertisement. But I regard the grading in this case as not of that character. No specification was made for quarrying at all in the park, and much less for grading it. The object of the statute is to secure a free and fair competition among bidders. This can not be accomplished unless the substantial and important things to be done are presented to the bidders in the advertisement.

This conclusion is sustained by the opinion of Denio, J., and the court, in *Brady* v. *Mayor, etc., of New York*, 2 Bosw. 173, and 20 N. Y. 316–19.

The next ground on which the court is required to interfere, is that the notice for bids was but ten days, instead of two weeks.

Section 346 of the municipal code provides that, " said trustees, before entering into any contract for work to be done, the estimated cost of which shall exceed five hundred dollars, shall cause at least two weeks' notice to be given, in one or more daily newspapers of general circulation in the corporation, that proposals will be received by said trustees for the performing of the work specified in said notice; and the trustees shall contract with the lowest bidder, if, in their opinion, said lowest bidder can be depended on to do the work with ability, promptness, and fidelity, and if such be not the case, said trustees may give the contract to the next lowest bidder, or decline to contract, and advertise again.

The fair interpretation of the language of this section requires " at least two weeks' advertisement," as a condi-

tion precedent to contracting. The words, "*the trustees, before entering into any contract for work to be done,*" standing as they do, at the head of the section, imply a prohibition. The plain sense of the section is, that the board shall not enter into any such contract until they have caused at "least two weeks' notice to be given."

There is some conflict of authorities on the question, how and where the line is to be drawn between things directory and things mandatory, in statutes. Perhaps, no precise rule can be given, other than that the purpose and character of the provisions shall be considered, as well as the language used, and the real *intention* drawn therefrom. It may be that the difference between ten days and two weeks' notice, as a step preliminary to a contract, is not generally important. But the legislature have, in this instance, made it important by expressly making "two weeks" the minimum of notice, and imperatively requiring it before any contract shall be entered into.

The case cited, which seems to countenance a different construction, is that of *Cole* v. *Green*, 6 M. & G. 872, which was a suit for work actually done upon a street, under a contract with a commissioner; and the objection to the recovery was, not that the notice required by the statute had not been given before contracting, but that some other requisition of the statute in making the contract had not been complied with, and the court held that the proviso in that statute which required that no such contract should be made for a longer term than three years from the making thereof, could not, by a fair construction of the sentence, extend to the other directions for making contracts. These other directions included a notice of "ten days, at least." But these directions or rules held a subordinate place in the provision, and the court said that the insertion of the single word "that," before the subsequent clauses in the sentence, would have extended the force of the proviso, and made them all conditions precedent.

The provision in our act requiring the two weeks' notice, occupies a different position, and the court can not disregard it. If the work had been done, and the public had had the benefit of it, as was the case in *Cole* v. *Green*, we might have allowed a recovery for its value, as upon a *quantum meruit*. But when the question is, whether such a contract shall be allowed to be performed and enforced as a valid contract, the statute stands directly in our way.

The case of *McSpedon* v. *Mayor, etc., of New York*, 7 Bosw. 606, is more in point. The statute of New York contains a provision like our own, except that the limit to the power of contracting without bids is $250, instead of $500.

It was held, in that case, that a contract for printing the charter of the city, which had been performed, and the benefit of which the city had enjoyed, was invalid, because given out without advertising for bids, and no recovery was allowed. It is probable we should permit a contractor, in a case like that, to recover, as on a *quantum meruit*, for the work done, though the contract would be void.

It was claimed, in argument, that the notice was a "two weeks' notice," within the meaning of the statute, because it was inserted in the daily newspapers in two successive weeks, although the contract was awarded on the tenth day after the first publication. But it is clear to my mind that "two weeks' notice" can not be considered as having been given in the daily papers before the expiration of two weeks from the first publication.

On the whole case, I think that the court is required, under the statute, to interfere and set aside the contract.

At a subsequent day of the term, a motion was made to have an allowance made to Colonel Dodds, the attorney employed by the tax-payers at whose instance the suit was brought, and after argument, TAFT, J., gave the following opinion:

Miller et al. *v.* Pearce et al.

In this case an injunction was allowed and perpetrated against the carrying out of a contract between the city, represented by the trustees of the city water-works and Michael Burns, at the suit of the plaintiffs, as tax-payers. The city solicitor filed the petition at the request of the tax-payers, and by direction of the board of trustees. He also filed an answer by the trustees, asserting the power to make the contract.

With his consent Colonel Dodds was retained, also, on behalf the plaintiffs, to prosecute the application, and the solicitor regarded himself as in duty bound to sustain the contract rather than otherwise. Colonel Dodds took the laboring oar, after the petition was filed, and the argument of the solicitor was, on the whole, against the application.

The question is, whether the court shall allow a fee to Mr. Dodds for his services in the case.

The two sections in the municipal code which bear on the point are Nos. 159 and 160.

Section 159 provides, "that the city solicitor shall apply to a court of competent jurisdiction for an order or injunction to restrain the misapplication of the funds of the corporation, or the abuse of its corporate powers, or the execution or performance of any contract made in behalf of the corporation in contravention of the laws or ordinances governing the same, or which was procured by fraud or corruption."

Section 160 provides that "in case the solicitor shall fail, upon the request of any of the tax-payers thereof, to make the application provided for in the preceding section, it shall be lawful for such tax-payer to institute a suit in his own name on behalf of the corporation."

What is intended by the application to the court? And in whose name is it to be?

In my opinion the application to be made by the solicitor is to be made in the name of the city, or in his own name on behalf of the city, the latter of which seems to me the more exact compliance with the statute, while the appli-

cation to be made by the tax-payer, upon failure of the solicitor to make the application in the name of the city or in his own name on behalf of the city, should be *in the name of the tax-payers on behalf of the city.*

Now when we consider the purpose of the application, I think it reasonable to suppose that it comprises not only the preparation and filing of the petition, but the supporting it with the proper preparation of evidence and presentment of both the facts and law of the case to the court. Like any other suit, it requires prosecution. Otherwise the statute would fail of its object.

In the present case the suit was brought in the name of the tax-payers, by the solicitor. But it was prosecuted principally by the tax-payers and their counsel, Mr. Dodds. Under the circumstances of the case, it was proper that it should be so. It seems to me to be within the provision of the statute, that such services should, in the discretion of the court, be paid for by the city.

The litigation, in whatever name prosecuted, is on behalf of the city. Under this act, it is contemplated that individual tax-payers shall be encouraged to interpose to prevent the misapplication of the public funds, even when the city solicitor and other representatives of the public may think it unnecessary. This act, I think, intends that in such cases there shall be a full investigation, with both sides represented.

It would be natural that the trustees, or board, which had made a contract should be disinclined to attack it, and ask to have it set aside. And the city solicitor, their adviser, would be expected to share in their views of the case. Yet the statute supposes that there may be cases in which private tax-payers may desire, and be able to promote the public interest by interposing and contesting such a contract.

When such a request is made by tax-payers to the solicitor, he might, instead of refusing, file the petition, and then suppress the investigation by withholding the testi-

mony, or by not presenting the case. This would not be carrying out the purpose of the statute, which intends that there shall be a full and fair investigation, if tax-payers desire it. But to check the meddlesomeness of such as would litigate without cause, the litigation must be carried on at their cost, unless they satisfy the court that there was reasonable cause to investigate.

Now, in the present case, the course taken was not unreasonable; the tax-payers thought they had a case for investigation. The solicitor, at the instance of the board of trustees, as well as of the tax-payers, filed the petition, though he was inclined to the opinion that the contract was good, and he filed the answer of the board in support of their action in the matter, and against the ground taken in the petition. He was very willing and desirous that a fair investigation should be had, and assented to the counsel for the tax-payers, at whose instance the suit had been commenced, appearing and prosecuting the case before the court, and he did so.

This was fair, and, as I think, in accordance with the real intent of the statute. To have excluded such counsel, and to have at the same time opposed the relief sought in the petition, would have tended to defeat the purpose of the statute. I do not think it the purpose of the statute that the solicitor shall prosecute such a contest against his judgment. And even when, as here, he has filed a petition at the instance of tax-payers, and finds himself embarrassed by counter instructions and by his own doubts of the propriety of the proceeding, I think he may well let the tax-payers prosecute the suit, if they so desire; and as the statute contemplates not only the filing of the petition but the prosecution of the suit, when it provides for making the application, I think it competent for the court in such a case to allow reasonable compensation to the counsel who prosecuted the suit and presented it before the court.