| 90 | 331 |
| 104 | 386 |
| 105 | 148 |
| 90 | 331 |
| f133 | 408 |
| 133 | 592 |

TUTHILL SPRING COMPANY *et al.*, v. J. D. K. SMITH and JOSEPH EDGINGTON, Appellants; and Ten Other Cases.

**Corporate Stock: Unpaid Subscription.** A stockholder knew that stock which he claims to hold as collateral security was not paid for. It does not appear that the corporation assented to its being so held. He and a trustee for him voted the stock. *Held,* that he was liable to creditors of the corporation for the amount unpaid on the stock. (6)

SAME. Without any agreement that it should be done, a stockholder was given additional shares of stock which stood on the books in his name and which he neither disclaimed nor offered to return. *Held,* that he was liable to corporation creditors on such shares as for an unpaid subscription. (7)

**Judgment Against Corporation: Collateral Attack by Stockholder.** Stockholders can not collaterally assail a judgment against their corporation on the ground that the claim upon which it is founded was collusively assigned to give the federal courts jurisdiction; especially where the corporation has no set-off against the assignor. (4)

**Depositions: Who May Take.** The persons before whom depositions may be taken under Code, 3735 may have the examination written out by another. (3)

FILING SAME TOO LATE. Where depositions are not filed within a time fixed and neither bad faith or prejudice are shown, a motion to suppress made after two terms have elapsed since the filing is to be overruled, and should have been made early enough to allow the retaking of the depositions. (2)

**Amount in Controversy: Consolidated Cases: ASSIGNMENT OF ERRORS.** Where law cases and an equity case are consolidated and tried together as in equity, without objection, there is jurisdiction on appeal if the amount involved in the cases as consolidated, in the aggregate, exceeds one hundred dollars, though separate judgments are rendered below, and there may be a review *de novo* without an assignment of errors. (1)

**Striking Amendment to Abstract.** Appellee's amendment to abstract will not be stricken for being filed later than appellant's argument where appellant tells appellee that he intends filing an amendment to his abstract and then files such amendment and his argument at the same time. Appellee had a right to wait for appellant's amendment before filing an amendment himself. (5)

Counterclaim. Where a counterclaim shows on its face that it is payable upon a contingency which has not occurred, there should be no judgment upon it though it be not denied. (7)

*Appeal from Hardin District Court.*—Hon. S. M. WEAVER, Judge.

MONDAY, FEBRUARY 5, 1894.

THE Tuthill Spring Company brings this action in equity, and alleges that it is a judgment creditor of the Shaver Wagon Company, an insolvent corporation organized under the laws of Iowa; that at the time of the creation of said indebtedness, the rendition of said judgment, and the commencement of this action, there stood in the name of defendant Smith capital stock of said company in sum of ten thousand dollars, no part of which was paid, and in the name of defendant Edgington six hundred dollars, only half of which had been paid; that the firm of C. Hardin & Sons, of which defendant Smith was a member, held sixty thousand dollars of said stock as collateral security, which stock was voted by said firm through said Smith; that defendant Smith caused said stock to be transferred on the books of the company to defendant Herman Dolph, who holds the same for said firm, and that nothing has ever been paid for said stock. The plaintiff, the Tuthill Spring Company, asks for an accounting with the defendants as to the amount of unpaid stock held by each, and for judgments. The defendant Smith answered, admitting that plaintiff obtained judgment against the Shaver Wagon Company, as alleged, but avers the same was procured by fraud and collusion; admits that ten thousand dollars of the capital stock of the Shaver Wagon Company stood in his name, but denies that, at the time the indebtedness upon which said judgment was rendered arose, defendant Dolph held any of said stock, but admits that prior

to the rendition of said judgment sixty-two thousand dollars of said stock was transferred to said Dolph in trust as collateral security for C. Hardin & Sons and for W. T. Shaver, to be reassigned on payment of the debt for which it was security, and denies that said stock was not paid for. He alleges that W. T. Shaver deposited sixty thousand dollars of said stock, assigned in blank, with Hardin & Sons, to secure his indebtedness, of over twenty thousand dollars, existing at the time of the organization of the wagon company; that on November 1, 1885, he (defendant Smith) filled the blank with the name of Mr. Dolph as trustee, to be held as aforesaid, and that neither he, Hardin & Sons, nor Dolph owned said stock, or had any interest therein, except as security; that said shares were never voted by defendant or Hardin & Sons, and were not voted by Dolph prior to said transfer to him. The defendant Smith states as a further affirmative defense, in substance, as follows: That prior to July 5, 1882, W. T. Shaver was engaged in the manufacture and sale of vehicles, and had built up a large and flourishing trade, and owned a valuable plant and stock of materials and finished work, and patents, which, with the good will, was estimated at one hundred thousand dollars; that on July 5, 1882, the Shaver Wagon Company was incorporated, with a capital stock of one hundred thousand dollars, divided into shares of one hundred dollars each; that said Shaver transferred to said corporation all his said property, including book accounts, which was inventoried at ninety-nine thousand, four hundred dollars, in consideration for which he received nine hundred and ninety-four shares of said stock, which, with six other shares subscribed and paid for, made up the one thousand shares; that on the seventeenth day of July, 1882, certificate number 21, for one hundred shares of said capital stock, paid up as aforesaid, of the par value of ten thousand dollars, was

issued to said Shaver, and on the same day assigned by him to this defendant as collateral security for indebtedness due Hardin & Sons and this defendant; that on the same day said certificates were surrendered, and certificate number 24, for one hundred shares of fully paid up stock of said company, was issued in lieu thereof to this defendant to complete said security; that, on said seventeenth day of July, certificate number 20, for fifty shares, number 23, for five hundred shares, number 32, for twenty shares, and number 33 for fifty shares, par value, sixty-two thousand dollars, were issued to said Shaver as fully paid up stock, and afterward were deposited by Shaver with Hardin & Sons as collateral security, assigned in blank, and thereafter the blank was filled with the name of Herman F. Dolph, trustee, and transferred to him as before stated. Smith further avers in detail the facts upon which he relies as showing that the judgment set out in plaintiff's petition was procured through collusion, which allegations will be hereafter noticed. The defendant, Joseph Edgington, answered, denying that six hundred dollars' stock of said company stood in his name, or any other amount which had not been paid in full. He admits that three hundred dollars of said stock stood in his name, and alleges that the same had been paid for in full. By way of counterclaim, he asks to recover upon a promissory note of the plaintiff for eight thousand, eight hundred and fifty-eight dollars and fifty-two cents, as will hereafter be more fully noticed. The bill of plaintiff was dismissed as to all the defendants except J. D. K. Smith and Joseph Edgington, and judgments were entered against them in favor of the plaintiff, from which they appeal. Ten actions at law were brought by creditors of the Shaver Wagon Company against J. D. K. Smith, which, upon his motion, and in pursuance of a stipulation, were submitted below with the above entitled case, and

judgment rendered in each case against the defendant Smith, from which he also appeals.—*Affirmed.*

*Huff & Ward* for appellants.

*C. E. Albrook* for appellees.

Given, J.—I.   Certain of the plaintiffs in said law actions move to dismiss the appeals therein upon the grounds that the amount in controversy is less than one hundred dollars, and that no assignment of errors has been made.   In the other of said actions the motions are upon the ground only, that there is no assignment of errors.   It is true, as claimed, that in some of those cases the amount claimed is less than one hundred dollars, and that there is no bill of exceptions or assignment of errors in any of them.   The record shows that it was agreed by all the parties, in open court, that each and all of these cases should "be consolidated and tried with number 5259, the case in equity."   It also appears that on motion the cause was, without objection, set for hearing on depositions; that depositions were taken with reference to all of said cases; and that they were tried together, as in equity, without objection.   The claims of the plaintiffs, though resting upon the same facts as to the liability of the defendant, were separate and independent, and therefore separate judgments had to be rendered; but neither this, nor the allowance of time to file bills of exception, changes the fact that by agreement the cases were consolidated and tried as in equity.   Being so consolidated, the amount in controversy in the combined cases exceeded one hundred dollars; and, having been thus tried in equity below, appellants are entitled to a trial *de novo* in this court.

II.   This case was set for trial on depositions, and it was ordered that plaintiffs have until August 10, 1890, to file depositions; defendants to have until September 20, 1890, and plaintiffs to October 10, 1890, to

take rebutting evidence.   The depositions in behalf of
plaintiffs were not filed until after the dates fixed.   On .
the day the cause was called for trial—June 23, 1891—
and after two or more terms had elapsed since the
filing of depositions, the defendants moved to suppress
the depositions because not filed in time.   There is no
showing of bad faith or prejudice by reason of the
delay.   If the defendants desired the suppression of
these depositions, they should have so moved at one of
the preceding terms, so that the depositions could have
been retaken, if necessary.   See *Sweet v. Brown*, 61
Iowa, 669, 17 N. W. Rep. 44.

III.   Plaintiff gave notice to take depositions
before N. S. Carpenter, notary public.   Defendant
Smith appeared in person, and the other parties by
their respective attorneys.   The notary selected F. E.
Brown, a shorthand writer, to take the examination in
writing,   whereupon   defendants   made   objection   as
follows:   "Here defendants object to the depositions
being taken by F. E. Brown in shorthand—first,
because the notice was served upon defendants to take
the depositions before N. S. Carpenter, notary public,
and not before F. E. Brown;   second, because F. E.
Brown is the clerk of C. E. Albrook, and in his employ,
the attorney for the Tuthill Spring Company, the
plaintiff in the case, and defendants protest against the
testimony being taken in shorthand by F. E. Brown,
who is the private secretary in the office of counsel for
plaintiff, or in any other form."

This objection is upon two grounds, namely, that
the notice was to take depositions before Mr. Carpenter
and not before Mr: Brown, and that Mr. Brown was in
the employ of plaintiff's attorney.   The 'protest was
not against the manner of taking the examination, but
against its "being taken in shorthand by F. E. Brown,
*   *   *   or in any other form."   Section 3735 of the
Code is as follows:   "The person before whom any of

the depositions above contemplated are taken, must cause the interrogatories propounded, whether written or oral, to be written out, and the answers thereto to be inserted immediately underneath the respective questions." There can be no question of the right of the person before whom depositions are taken to cause the examination to be written out by another. These depositions were taken before Mr. Carpenter, in pursuance of the notice, and not before Mr. Brown. It is denied that Mr. Brown was in the employ of plaintiff's attorney, and there is nothing in the record to show that he was at that time employed as stated in the objection. Appellants present no argument in support of these objections, and we think there was no error in overruling them. There was no prejudicial error, if error at all, in permitting plaintiff to read in evidence parts of the deposition of appellant Smith, as taken in the case of *Shaver v. Hardin & Sons*, under the stipulation shown in the record, nor in that appellants were permitted to and did read such other parts of said depositions as they desired.

IV. The facts upon which collusion and fraud are alleged in obtaining the judgment set out in plaintiff's petition are, briefly, these: W. T. Shaver held a promissory note of the Shaver Wagon Company, executed to him October 23, 1885, for eight thousand, eight hundred and fifty-eight dollars and fifty-two cents, due October 23, 1886. In November, 1886, Shaver, then a resident of Iowa, and the plaintiff, a resident of Indiana, transferred said note to plaintiff in consideration for the note of the plaintiff to him for the same amount, due at the same time, upon which is this indorsement: "This note is given for another note, this day purchased of me, for the same amount, signed by the Shaver Wagon Company, and is to be paid when the Shaver Wagon Company's note is collected, and not before. [Signed] "W. T. Shaver." Appel-

lants contend that this transfer was fraudulent, and done to enable the plaintiff to bring suit in the federal court and to collect said note from the Shaver Wagon Company for the benefit of W. T. Shaver, and to prevent the Shaver Wagon Company from setting up a defense by way of counterclaim against W. T. Shaver. When this judgment was obtained, appellant Smith was president and appellant Edgington a stockholder in the Shaver Wagon Company, and neither set up any counterclaim in favor of the company, nor is there any evidence in this case to show that any counterclaim existed in favor of the company. The judgment included other liabilities of the Shaver Wagon Company to the plaintiff than the note to Shaver. We conclude that, under the facts, it is immaterial to the wagon company, its officers, stockholders and creditors whether or not the judgment was in favor of plaintiff or of Shaver, and that the appellants should not now be heard to question the validity of the judgment on the ground of a want of jurisdiction in the federal court, in this collateral way.

V. Appellant Smith moves to strike appellees' abstract because not filed in time. He claims to have been prejudiced by reason of appellees' abstract not being filed until after he had filed his argument. Appellant's last amendment to his abstract was filed April 11, 1893. It appears by affidavit of appellees' counsel that appellant had informed them of his purpose to file an amendment to his abstract. Appellees could not know that an abstract would be required of them until appellant's was complete, and, with the assurance given, were justified in waiting for the amendment. Appellant did not wait for appellee's abstract before filing his argument, but filed it on the same day with his last amendment. If appellees' abstract called for further argument, appellant was entitled to make it. The motion to strike appellees' abstract is overruled.

VI.  This brings us to consider the vital question involved in the merits of the case, namely, whether either of the appellant's held capital stock of the Shaver Wagon Company that had not been paid for, and upon which they should be charged in favor of appellees.  The burden is upon appellee's to establish such liability.  We first inquire as to the appellant Smith.  There is no question but that he held certificate number 24 for one hundred shares of the capital stock of the Shaver Wagon Company, which certificate was issued to him in his own name upon his surrendering certificate number 21 for the same number of shares issued to W. T. Shaver, and assigned by Shaver to appellant Smith.  It also appears without question that a number of certificates, aggregating sixty-two thousand dollars par value, issued to Mr. Shaver, were assigned by him in blank, and deposited with appellant Smith, a member of the firm of C. Hardin & Sons, as collateral security to said firm, and that Mr. Smith afterward filled the blank with the name of Herman Dolph as trustee, and delivered the certificates to him. Appellant Smith claims that, at the organization of the Shaver Wagon Company, W. T. Shaver transferred to the company his entire plant and business as a manufacturer, including the book accounts, etc., valued at ninety-nine thousand, four hundred dollars, for which he was to receive nine hundred and ninety-four of the one thousand shares of the capital stock of said company; that the certificates in question were issued to Mr. Shaver in pursuance to that agreement, and were fully paid for by the transfer of the property.  Appellee contends that the property was not worth to exceed forty-four thousand, five hundred dollars; that it was taken at its value; that the company assumed certain liabilities for Mr. Shaver, and that he was only entitled to two hundred shares of the capital stock in return for his property,

Our examination of the evidence leads us to the conclusion that the value of the property transferred by Mr. Shaver to the wagon company did not exceed forty-four thousand, five hundred dollars; that the company did assume about thirteen thousand, seven hundred dollars of Mr. Shaver's indebtedness, a great part of which was a lien upon the property; and that Mr. Shaver was only entitled to two hundred shares capital stock as additional compensation for his property. The subscriptions to stock were as follows: W. T. Shaver, two hundred shares, twenty thousand dollars; E. Eastabrook, one share, one hundred dollars; W. J. Brooks, one share, one hundred dollars; W. A. Greer, one share, one hundred dollars; Joseph Edgington, three shares, three hundred dollars; and W. T. Shaver, seven hundred and ninety-four shares, seventy-nine thousand, four hundred dollars. Mr. Shaver's account with stock shows that certificate number 1 was issued to him in 1882 for two hundred shares, and that on July 17, 1882, certificates numbers 6 to 21, inclusive, aggregating five hundred and ninety-four shares, were issued to him, and that, of these, he transferred, July 20, to Edgington, certificate number 10, for three shares; July 21, certificates 18 and 19, twenty shares, to J. B. Fish; and July 17, certificate number 21, one hundred shares, to appellant Smith. It will be observed that certificate number 1 was for the full amount of shares to which we find Mr. Shaver was entitled. There is evidence tending to show that certificate number 1 remained attached in the certificate book for some time, but it is not shown what ultimately became of it, and we find nothing in the books to show that it was ever canceled, or that any of the certificates subsequently issued to Shaver were on account of the two hundred shares to which he was entitled. It is claimed, and we think, correctly, that the seven hundred and ninety-four shares subscribed by Shaver were not paid for,

but were so subscribed for the purpose of having the shares issued to Shaver to be more conveniently held and disposed of by him for the benefit of the company. Appellant Smith's certificate number 24 is not derived from the two hundred shares to which Shaver was entitled, nor is any part of the sixty-two thousand dollars par value held by Mr. Dolph as trustee. We think it is entirely clear, under the evidence, that no part of these shares of stock was ever paid for, and that Mr. Smith knew this fact at the time he received the certificates. He was intimate with the business of the wagon company from the beginning, and served as its president during the greater part of its active existence. At the time at which certificate number 21 was transferred to appellant Smith, he gave to Shaver his check for five thousand dollars and at the same time, or immediately thereafter, received from Shaver his check for the same amount. The only reason given for this is by Mr. Smith, who says: "The object was so that Shaver could keep from his bookkeeper an exact knowledge of the transaction between him and Hardin & Sons." We are inclined to think that it was to make it appear that Smith had paid Shaver for the stock represented in certificate number 21, though we confess that the purpose is not entirely clear to our minds.

Question is made whether a party holding unpaid stock as collateral security can be charged thereon. It appears in evidence that the certificates for sixty-two thousand dollars par value deposited with Mr. Smith were voted by him, and after the transfer, by Mr. Dolph as shares owned by them. It does not appear that the wagon company ever consented to the transfer of these certificates as collateral security, nor that the holders under the transfers treated them as other than their own property. Whatever may be the liability of the holder of unpaid shares as collateral security, we con-

clude that, under the facts of this case, the appellant, Smith, should be charged upon these shares in favor of appellees; he having received them, knowing that they were not paid for, and having treated them as his own.

VII. In addition to the three shares subscribed and paid for by the appellant Edgington, it appears that on July 20, 1882, Shaver transferred to him certificate number 10 for three additional shares, said certificate number 10 being for part of the seven hundred and ninety-four shares held by Shaver for the benefit of the company. Mr. Edgington admits in his testimony the receipt of this certificate, and that he never paid anything for it. He disclaims any agreement to pay for it, and claims not to have understood why it was given to him, unless it was an arrangement to give to each subscriber double the amount of stock that he had actually paid for. Mr. Edgington has continued to hold this stock, and to allow it to stand in his name upon the books of the company, without offering to return the certificate or disclaim ownership thereof. In view of his relation to the company, and the facts attending his receipt and retention of this certificate, which, as we have seen, was unpaid for, we think he should be held to owe the company therefor, and to be liable to the plaintiff, as found by the district court. Appellant. Edgington contends that, as his counterclaim was not denied, he was entitled to judgment thereon. In his counterclaim he asked to recover upon the promisory note mentioned above, which the plaintiff executed to Mr. Shaver. By the indorsement thereon, that note is not to be paid until the Shaver Wagon Company's note, upon which plaintiff's judgment was taken, is paid. The counterclaim failed to show a cause of action, and hence appellant Edgington was not entitled to judgment thereon. We conclude that the judgments rendered by the district court are correct, and should be AFFIRMED.