LUCRETIA E. COMSTOCK ET AL., Appellees, v. CITY OF EAGLE GROVE ET AL., Appellants.

**Appeal:** AMOUNT OF CONTROVERSY. Where several plaintiffs join in an action to restrain the collection of special assessments and to cancel sales made thereunder, the aggregate amount of

| 133 | 589 |
| 138 | 74 |
| f138 | 75 |
| 138 | 85 |

| 133 | 589 |
| 141 | 71 |
| c141 | 73 |
| 141 | 320 |

| 133 | 589 |
| 144 | 630 |

their assessments, rather than that of each considered separately, determines the right of appeal.

**Sewers:** CONSTRUCTION: RESOLUTION AND NOTICE. Man holes and lamp holes in connection with a sewer are a part thereof and the fact that the resolution of necessity and notice for bids failed to mention the same did not render a contract for their construction illegal.

**Same:** OBJECTION TO ASSESSMENT. The provision in a sewerage contract that the contractor should take up an old sewer pipe along the line of his work, affords no ground for objection to a special assessment, where the same is to be done without expense to the city and there is no showing that the contractor enlarged his bid on that account.

**Same:** NOTICE FOR BIDS: SPECIAL ASSESSMENTS: INJUNCTION. Failure to publish notice of a proposal for bids for making public improvements strictly in conformity with the statute will render subsequent proceedings void; and an abutting property owner may enjoin the collection of special taxes assessed for improvements under a contract let upon insufficient notice.

**Same:** WAIVER. The notice to bidders goes to the jurisdiction of the council to proceed with a public improvement, and failure to give the same in strict conformity with the statute is not such a defect as may be waived by neglecting to object thereto at some succeeding stage in the proceedings.

Deemer, J., dissenting.

**Same:** INJUNCTION. The resolution of a city council ordering an assessment and a finding that all previous steps had been taken in conformity with law is not conclusive against an action to restrain collection of the tax, where the record affirmatively shows want of jurisdiction to make the assessment.

**Same:** PARTIES. The purchasers at a tax sale are not necessary parties to an action previously commenced to set aside the tax.

*Appeal from Wright District Court.*— HON. J. R. WHITAKER, Judge.

MONDAY, MARCH 11, 1907.

ACTION in equity to restrain the levy and collection of an assessment on abutting properties sought to be made to pay the cost of a public improvement. From a decree in favor of plaintiffs, the defendants appeal.— *Affirmed.*

*J. W. Henneberry* and *Sylvester Flynn,* for appellants.

*Porter Donly,* for appellees.

BISHOP, J.— On August 3, 1903, the council of the city of Eagle Grove, acting upon the petition of abutting property owners, determined by resolution upon the construction of sanitary sewers in said city, one on Broadway street, and the other on Lucas avenue. A notice inviting sealed proposals for the work of construction of the Broadway street sewer was published in a local newspaper; the first publication being had on August 6th and the last on August 13th. A like notice in respect of the Lucas avenue sewer was published; the first publication being had on August 7th and the last on August 14th. In each of the notices the time fixed at which the bids would be opened and acted upon was August 17, 1903. And on that date the bids filed were opened, and separate bids of one Sullivan for the construction of each sewer were accepted. A contract with Sullivan was thereupon drawn up and signed, under which the work of construction was entered upon and completed. Thereafter the city published a notice of its intention to levy upon the abutting properties an assessment to pay the cost of construction according to a plat and schedule on file with the city clerk, and requiring objections to be filed within twenty days. According to the schedule, the several amounts proposed to be levied upon the separate properties range from $8.18 to $92.80. No objections were filed, and on the date fixed therefor an assessment according to the schedule was made. In this situation the present action was brought by plaintiffs — abutting property owners — praying an injunctional decree restraining the collection of such assessment; that the same be declared null and void, and for cancellation, etc. Subsequently, and before trial, there was brought into the case by an amendment to the petition the fact that the several properties of the plaintiffs had been sold for the un-

paid assessment, and it was further prayed that the sales thus made be canceled and set aside.

I. There has come to us with the case a motion to dismiss for want of jurisdiction in this court to entertain the appeal. The motion is bottomed on the thought that the amount involved as related to the respective plaintiffs, taken separately, is less than $100 — the jurisdictional amount as fixed by the statute. We think the motion should be overruled. The relief prayed is for a decree of cancellation and injunction, and it may be doubted if the case comes within the rule forbidding an appeal where the amount involved is less than $100. *District v. Ind. District,* 72 Iowa, 687; *Farley v. Geisheker,* 78 Iowa, 454; *Geyer v. Douglass,* 85 Iowa, 93. But, if the amount of the assessment must be regarded as controlling upon the question of jurisdiction, it remains to be said that the petition makes it appear that the aggregate of the assessment as levied upon the properties of these plaintiffs is in a sum exceeding $100, and we think this must be held to govern. If, as might have been the case, each individual plaintiff had commenced an action demanding relief only as to himself, and such several actions were thereafter, by consent of parties or an order of court, consolidated and so tried, there can be no doubt in view of our former holdings but that the amount in controversy would be the aggregate of the assessments according to the schedule. *Edwards v. Cosgro,* 71 Iowa, 296; *Tuthill v. Smith,* 90 Iowa, 331. This is upon the theory that there is, then, but a single proceeding involving the aggregate of the matters in dispute. Now, here, instead of a consolidation of actions separately commenced, we have an action in which all the parties having a like interest join in its commencement. And this they were specially authorized to do by statute. Code, section 3460. In effect, the parties agreed beforehand to consolidate their causes of action into one proceeding, and the relief asked is

1. APPEAL: amount in controversy.

that as to all the property owned by them the assessment and sale be canceled and set aside.

II.    A ground upon which the assessment is attacked is that the contract entered into was not in accord with the published resolution of intent and the notice inviting proposals, for that such contract by its terms was made to embrace the doing of other things than the construction of a sanitary sewer. The resolution and the notice speak simply of the construction of a sanitary sewer, whereas it is provided in the contract that manholes and lampholes, several in number, shall be constructed in connection with the work and as a part thereof. The former we understand to be a round opening into the sewer large enough to permit a man to enter for the purpose of cleaning or repairing. The latter we understand to be a smaller opening, to permit of the lowering of a lamp for the purposes of inspection. Whether or not the construction of such openings was included in the plans and specifications we are not advised; but we shall assume that such are a necessary, as they are a common incident to the construction of a sewer. And they become a part of it when constructed. In our view the failure to make special mention thereof in the resolution of intent or the notice to bidders could not be given effect to destroy the effectiveness of the contract as providing for matters other than that specified in such resolution and notice, respectively. Moreover, we fail to see how any one apart from the successful bidder could find substantial grounds on which to complain because of the inclusion of the requirement in the contract.

*2. SEWERS: construction: resolution and notice.*

A further provision of the contract pointed out in this connection makes requirement that the contractor shall " dig up the old sewer pipe along the line of the contemplated sewer without additional expense or cost to the city." Whether or not this was a matter embraced in the plans and specifications we are not advised;

*3. SAME: assessments: objection to assessment.*

and we cannot assume that it was. As the contract provides that the work shall be done without expense to the city, in our view, the only way in which a taxpayer could be prejudiced would be upon the assumption that the bidder enlarged his bid to cover such expense. That was not possible, as apparently the contractor's bid had been made and accepted before the subject of the removal of the old sewer was even thought of.

III. The assessment is attacked upon the further ground that no proper and legal published notice inviting proposals to do the work of construction was given as required by statute prior to the opening of bids and the letting of the contract. It will be observed that the day on which the bids were opened and the contract awarded was only three days removed from the day of the last publication of notice in the case of the Lucas avenue sewer, and but four days in the case of the Broadway sewer. Code, section 813, which was the sole authority for proceeding, provides that in all cases of street improvements and sewer contracts " shall be let in the name of the city, to the lowest bidder, by sealed proposals, upon giving notice for at least ten days by two publications in a newspaper," etc. The first question arising out of this situation must be answered upon a construction of the statute as to when, within the meaning thereof, the ten-day period commences to run. And, if from the day of the last publication of notice, then we have the further question whether the requirement for notice is so far jurisdictional in character as that a failure of compliance may be relied upon by an abutting owner to defeat by injunction the levy of an assessment on his property. It is general, if not universal, thought that competition in bidding is necessary to prevent favoritism, corruption, extravagance, and improvidence, and to insure economy in connection with the making of contracts for municipal improvements. And, as competition is not possible except through publicity, the requirement for

4. SAME: notice for bids: special assessments: injunction.

publication of notice inviting bids must be regarded as an essential preliminary to a contract.  Not only was this thought present with the Legislature, but that body deemed it best to prescribe in what manner notice should be given and for what length of time.  It must be by publication in a newspaper of the city, and " for at least ten days by two publications."  Having in mind the purpose of the notice and regarding the language thus used, is seems clear to us that it was here meant that each publication of notice must be at least ten days before the day fixed for opening the bids and awarding the contract.  From no other point of view could there be ten days' notice by two publications. As in the case before us, instead of having ten days' notice by two publications, we have ten days' notice by one publication and three days' notice by another, it follows that there was a failure of compliance with the statutory requirement.  Our conclusion on this point finds direct support in the following cases:  *In re Pennie,* 108 N. Y. 364 (15 N. E. 611); *State v. Board, etc.,* 43 Minn. 322 (45 N. W. 614).

We are thus led to a consideration of the question as to the effect which must be given to such failure to publish notice as required by the statute.  Now, our cases are united in the holding that statutory requirements as to manner and form of proceeding when it is proposed to assess abutting property for the costs of a public improvement are mandatory in character, and must be strictly pursued in favor of the abutting owners.  If this shall not be done, there is no jurisdiction to proceed.  There can then be no contract, and hence no assessment.  Note of a few of such cases will serve to illustrate.  In *Railway v. City,* 112 Iowa, 300, it was said:  " No citation of authorities is needed in support of the fundamental principle that the right of a municipality to levy special assessments depends on statutory enactment, . . . and a statute conferring such power is strictly construed in favor of the person against whom the assessment is

levied." And in *Polk v. McCartney*, 104 Iowa, 567, after quoting the provisions of the statute requiring that contracts for public improvements " shall be made with the lowest bidder upon sealed proposals, after public notice for not less than ten days in at least two newspapers," etc., we said: " The provisions of the law quoted are mandatory, and their observance is a condition precedent to the right of the council to make contracts in pursuance of them." So also, in *Coggeshall v. City*, 78 Iowa 235, we said that the provisions of statute on the subject here being considered " are clearly mandatory." And again: " The statute leaves to the council no discretion as to the course which shall be pursued. . . . The power must be exercised strictly in the manner prescribed by law." Analogous in principle is the holding in *Zalesky v. City*, 118 Iowa, 714. There it appeared that an ordinance of the city of Cedar Rapids required notice of an intention to build sidewalks by the city to be given by publication in a newspaper. And we held that the giving of such notice was essential to jurisdiction — that the ordinance provision could not be satisfied by the service of notice personally on the abutting lot owners. The cases arising elsewhere having to deal with similar statutes, and giving expression to the same thought, are very numerous. Of such we shall call attention only to cases which go to the subject of a failure to publish notice to bidders in the manner and for the length of time as required by law. In *Taylor v. Lambertville*, 43 N. J. Eq. 107 (10 Atl. 809), it appeared that an ordinance of the defendant city required that notice to bidders for public work should be published in three newspapers. In the case there before the court publication had been had in but one newspaper. It was held that the contract entered into was nugatory; the chancellor remarking: " It [the ordinance] is to have the effect of a law to those to whom it is directed. It is intended that it shall be observed. Plainly, if an ordinance in such case may be totally disregarded in matters so essential, then the city

authorities may disregard their ordinances in every other case, and the requirements of their charters be set at naught by them, and cities ruled according to the present will of a common council." In *McCloud v. City,* 54 Ohio St. 439, (44 N. E. 95), it appears that the notice calling for bids had been published for a less time than the statutory period. In holding a contract void the court said: "The duty omitted was one which preceded the contract and was preliminary thereto. The notice which the council omitted to publish for the prescribed time was provided by the Legislature as a safeguard to the taxpayer against private rapacity and official indifference. This beneficial provision has no value if it can be disregarded by a city council, and yet a contract entered into binding upon the city and consequently imposing a burden upon the taxpayers. The evils that imperatively demand these restrictive statutes are of common notoriety. They can be held in check only by regarding them as mandatory statutory provisions designed to circumvent them." In line with these cases are the following, and we content ourselves by merely citing them: *Kretsch v. Helm,* 45 Ind. 438; *Mayor, etc., v. Johnson,* 62 Md. 225; *Hewes v. Reis,* 40 Cal. 255; *Yeakel v. City,* 48 Ind. 116; *City v. Puterbaugh,* 46 Ind. 550; *Miller v. Pierce,* 2 Cin. R. 44; *Ardrey v. City,* 13 Tex. Civ. App. 442 (35 S. W. 726); *In re Douglas,* 46 N. Y. 42; *In re Phillips,* 60 N. Y. 16. It follows that as notice to bidders is essential, and as there was a failure in the instant case to publish as required by the statute, it must be said that the noncompliance was fatal. The case stands as though no notice had been given at all. And this is so on reason as well as authority. To hold otherwise would be to warrant a city or town council in putting the statute under foot, and, if not to dispense with notice altogether, to at least fix the manner and time of notice as desire or self-interest might suggest, and this without jeopardizing the validity of such contract as it might subsequently see fit to enter into. The

principle of competition — all important in the eye of the law — could thus be stifled if not altogether eliminated.

But it was pleaded by the city, and it is now contended in argument on its behalf, that as there was filed in the office of the city clerk a plat and schedule showing the proposed assessment, as required by Code, section 821, of which due notice was given as provided for by law, and as plaintiffs did not appear at the time fixed in the notice therefor and make objections, and as they did not appeal from the action of the city council in levying the assessment, they must be held to have waived whatever right they may have had to question the assessment, and are now estopped from disputing the validity thereof. To sustain this position reliance is placed on Code, sections 823, 824, 839, and these are in substance as follows: Section 823 provides that, after filing the plat and schedule, the council, shall give notice thereof by newspaper publication and handbills, " and that within twenty days after the first publication all objections thereto, and to the prior proceedings, on account of errors, irregularities, or inequalities, must be made in writing and filed with the clerk; and the council, having heard such objections and made the necessary corrections, shall then make the special assessments as shown in said plat and schedule, as corrected and approved." Section 824 provides that all objections to errors, irregularities, or inequalities in the making of said special assessments, " or in any of the prior proceedings or notices," if not made before the council, shall be deemed waived. Section 839 provides for an appeal to the district court from a levy of special assessment, and directs that, " upon such appeal, all questions touching the validity of such assessment, or the amount thereof, . . . shall be heard and determined. The appeal shall be tried as an equitable action and the court may make such assessment as should have been made, or direct the making of such assessment by the council."

5. SAME: waiver.

The trouble with the argument thus presented is that plaintiffs are not complaining of a mere error, irregularity, or inequality such as are within the contemplation of sections 823 and 824. The errors, etc., there referred to are such as may be corrected by the council upon its attention being called thereto, and to the end that an assessment may be made which shall be fair and equitable. This is the fair reading of the statute, and it is its undoubted meaning. And the errors, etc., in the prior proceedings and notices which are to be deemed waived are such proceedings as have occurred in carrying out the contract, including the making of the assessment, and such notices as have been given to the abutting owners respecting the intention to assess them for the cost of the improvement. This is true for at least two reasons: In the first place, if such were possible in any case, it cannot be said with any propriety that by the enactment of section 823 the Legislature contemplated that a city council which had proceeded without jurisdiction might supply the want of jurisdiction and give legality to its past acts done in defiance of the statutes, by simply holding a meeting to hear objections, correct errors, etc. That such was not the intention is made clearer by considering that, while it would be possible for the council to sit and hear objections, it would not be possible for it to correct or cure an error such as is here complained of. The sitting would amount to an idle ceremony. Assuming that had the notice been published the required length of time other bidders would have come in offering to do the work for a price one-fourth or one-third less than that named in the earlier bids, and such may very well have occurred, how would the council proceed to correct the error committed or meet the consequences of its failure to comply with the statute? The abutting owners were entitled to the fullest competition in bidding. How will a council, sitting to hear their well-founded objection, proceed to grant relief? It would amount to a farce for the council to merely listen to the objection and then pro-

ceed to an assessment. But this it would have to do if the contention of counsel is correct. Either that or refuse to make any assessment at all. In the second place, if the council did not have power to procede to an assessment, an abutting owner could not be bound against his will — expressed* with reasonable promptness — by any action it might see fit to take. It is fundamental that a want of jurisdiction, whatever the tribunal, is fatal to its acts, and no one can be held to have waived such want by failing to appear and object. It may be taken advantage of at any time or place. And, conceeding the existence of power, no one will suppose that the Legislature intended to create a tribunal whose acts done without jurisdiction should be deemed legal if no one appears in response to a subsequent notice given by it to make objection. On no principle, therefore, can a grant of right to a city council to proceed to the correction of errors, to reduce irregularities, or to adjust inequalities be considered as having operation to cure jurisdictional defects occurring in its prior proceedings, simply on condition that a time shall be fixed for the making of objections and none shall be made. To conclude with, we hold that the sections of the Code relied upon were intended to cover errors and irregularities arising out of the exercise of a jurisdiction acquired. They have no relation to cases involving a want of jurisdiction. Now, here the matters complained of relate back to the proceedings antedating the execution of the contract, and the challenge is to the power of the council to enter into such contract. As said in Coggeshall v. City, supra: "The defect of the proceedings was not a mere irregularity, . . . . but was jurisdictional. The council omitted to do the acts which, under the statute, are essential to their power to enter into any contract for the paving of streets. The power to contract for the improvements must of necessity be acquired before any tax can be levied to pay the expense incurred in making them." That was a case in which the matter

complained of had relation to the published notice to bidders; the defect pointed out being that such notice did not specify the particular kind of work to be done. That an abutting property owner who is threatened with the levy and enforcement of an illegal assessment may, as did these plaintiffs, proceed in equity to have such assessment canceled, we have repeatedly held. Among the latter cases are *Railway v. Phillips,* 111 Iowa, 377; *Smith v. Peterson,* 123 Iowa, 672; *Gallaher v. Garland,* 126 Iowa, 206.

It may be thought that our conclusion as above expressed respecting the force of operation to be given Code, sections 823, 824, is in conflict with some things that were said in our recent case of *Owens v. City,* 127 Iowa, 469. This is not so. It will be found upon reading the opinion in that case that the principal complaint was of errors and irregularities in procedure occurring after the making of the improvement contract, and what was said in respect thereof was upon the express assumption that jurisdiction to proceed was present. It is true that some defects antedating the contract were there complained of. But they were minor in character, and were either insufficient to work a failure of jurisdiction or such as that no prejudice to the rights of abutting owners could flow therefrom. What was there said was certainly not intended as a pronouncement to the effect that defects, jurisdictional in character, working substantial prejudice, and which could not be corretced on subsequent hearing preliminary to an assessment, were waived by failure to appear and object, or that such defects could not be taken advantage of by an action for injunction.

Two further matters of contention are presented in argument by counsel for appellant, neither of which seems to have been suggested in the court below, and for that reason might well be disregarded. They may

6. Same: injunction.

be disposed of, however, in a word. It is said that the finding of the city council voiced in the resolution ordering the assessment, to the effect that all previous steps

required to be taken and had been taken in conformity with law, became conclusive, and could not thereafter be made the subject of collateral attack. But here the attack is direct and on jurisdictional grounds, and in no event could a finding by the council prevail over the undisputed facts appearing on the record showing affirmatively a want of jurisdiction.

It is also said that there is a want of necessary parties to the action, in that the purchasers at the tax sale were not brought in. But the tax sale was had after this action to cancel the assessment was commenced. Having purchased *pendente lite,* the holders of tax sale certificates took with constructive knowledge and became subject to the result of the litigation. *Cooley v. Brayton,* 16 Iowa, 10; *Crum v. Cotting,* 22 Iowa, 423.

7. SAME: parties.

No other questions of seeming merit are presented. It is our conclusion that the court below rightly held the assessment and the tax sale based thereon to be void, and in entering a decree accordingly.— *Affirmed.*

DEEMER, J. (dissenting).— Section 824 of the Code provides that " all objections to errors, irregularities or inequalities in the making of special assessments or in any of the prior proceedings or notices not made before the city council at the time and manner provided for shall be waived except where fraud is shown." Section 823 provides for hearing upon notice before the city council of all objections to proposed assessments in account of errors, irregularities, or inequalities in the prior proceedings leading up to the assessment. Of course, if the city council had no jurisdiction by reason of failure to take the necessary steps to enable it to act at all in the matter of making assessments, an independent action in equity would lie to enjoin the collection of the assessments. But if, having jurisdiction, there be simply an error or defect in the making of the assessment or in the prior proceedings or notices, then resort must be had to the tribunal created for the purpose of hear-

ing these objections, to wit, the city council for the correction thereof. The notice which the majority hold was defective was not such an one as is required to give the council jurisdiction over the matter of making the improvement. The notice was of proposals for bids, and it is not a case of no notice, but of a defective one. It was not essential to the jurisdiction of the board, but an incidental notice to those who proposed to bid for the work. Failure to give it would, of course, be a ground of objection under section 823 of the Code. But, even if jurisdictional, it is not a case of no notice, but of a defective one, objection to which cannot be made in a collateral proceeding. This matter is ruled by *Owens v. City,* 127 Iowa, 469, and cases therein cited. The majority, as I think, fail to distinguish between defects which are so fundamental as to preclude the tribunal of the right to act at all and those which are not given for jurisdictional purpose, but to secure some benefit to the property owner, as in this case a notice of proposal for bids. They also fail to distinguish, as I think, between cases of no notice and where there has been a defective one. It is so well settled as hardly to require the citation of authorities that, even where notice is necessary to give jurisdiction, defects therein or in the time or manner of service cannot be challenged in a collateral proceeding. But see cases annotated under sections section 3519 of the Code.

The city council was required to pass upon the sufficiency of the notice of proposal for bids, and, having such notice before it and having treated the same as sufficient, its decision thereon cannot, under well-settled rules, be collaterally attacked; but should be made a ground of objection under section 823 of the Code. That an independent action in equity is a collateral attack is not open as I believe to debate. But see Owens v. City, *supra.* It is so well settled that in matters of taxation the Legislature may create a tribunal for the settlement of all questions growing out of errors, defects, or irregularities in the proceedings leading

up to the assessment, and that, when it does so, the jurisdiction thus conferred is exclusive, unless otherwise expressed. As said in *Macklot v. City,* 17 Iowa, 387: " When a statute provides a tribunal for the correction of errors by a proceeding in the nature of an appeal to it, such jurisdiction is exclusive." This rule, announced in the year 1864, has never been departed from, but has been reaffirmed in the following, among other, cases: *Newton v. McKay,* 130 Iowa, 596; *Collins v. City,* 118 Iowa, 35; *Stevens v.* *Carroll,* 130 Iowa, 463; *Crawford v. Polk County,* 112 Iowa, 118, and cases cited. None of the cases cited by the majority run counter to these views as I understand them. *Coggeshall v. City,* 78 Iowa, 235, was decided prior to the adoption of the statute which I have quoted in this dissent, creating a tribunal for the settlement of such questions. And in that case the city council did not pursue the jurisdictional steps necessary to the work, in that it did not in advance of notice determine the kind of pavement it should use. As said in the opinion, the defect was not a mere irregularity, but was jurisdictional, in that the city council could enter into .no contract until it had first determined the character of the work and the material to be used therein. But it is enough to say that when that case was decided, there was no statute creating a special tribunal for the correction of errors and defects. The same observation is applicable to *Polk v. McCartney,* 104 Iowa, 567; *C., R.* *I. & P. R. R. v. City,* 112 Iowa, 300, is in no way in point, nor is *C., M. & St. P. R. v. Phillips,* 111 Iowa, 377. In the latter case it is expressly stated that the decision is bottomed upon the law as it stood prior to the adoption of the Code of 1897, which introduced for the first time the statute upon which this dissent is based. *Smith v. Peterson,* 123 Iowa, 672, contains nothing in point, and *Zalesky v. City,* 118 Iowa, 714, announces nothing contrary to the views I have expressed. That was a sidewalk case, and was decided upon grounds in no manner applicable to this case. In *Gallaher*

*v. Garland,* 126 Iowa, 206, the city council attempted to assess the cost of grading against abutting property owners. This it had no jurisdiction or authority to do. The rule for which I contend is not one peculiar to this jurisdiction, but is the prevailing one everywhere. See, *Lennon v. Mayor,* 55 N. Y. 363, and cases cited; *Eno v. Mayor,* 68 N. Y. 214; *German Sv. v. Ramish,* 13 Cal. 120 (69 Pac. 89, 70 Pac. 1067); *Ferguson v. Stamford,* 60 Conn. 432 (22 Atl. 782); *Peoria v. Kidder,* 26 Ill. 351; *De Puy v. Wabash,* 133 Ind. 336 (52 N. E. 1016); *Sumner v. Milford,* 214 Ill. 388 (73 N. E. 742); *Newman v. Emporia,* 41 Kan. 583 (21 Pac. 593); *Atkinson v. Newton,* 169 Mass. 240 (47 N. E. 1029); *Nelson v. Saginaw,* 106 Mich. 659 (64 N. W. 499); *Kelly v. Minneapolis,* 57 Minn. 294 (59 N. W. 304, 26 L. R. A. 92, 47 Am. St. Rep. 605).

The statute I have quoted was undoubtedly enacted to forbid just such attacks as have been made upon this assessment. The defect was not jurisdictional. There is no charge or claim of fraud. There was a notice, but the service thereof was simply defective, and plaintiff should have made his objection to the error or defect in the notice before the city council as provided in section 823 of the Code. Not having done so, he waived the defect. So says section 824 of the Code, and there is no claim that the Legislature was not acting within its power in passing the act. In my opinion the majority have either consciously or unconsciously overruled many of the cases I have cited without giving them the consideration they deserve.

For these reasons, I believe the decree should be *reversed.*