ALLEN WHITFIELD, Appellant, v. M. F. GRIMES et al., Appellees.

No. 45121.

OCTOBER 22, 1940.

Whitfield & Musgrave and Wilbur J. Bridges, for appellant.

D. L. Murrow and Tedford W. Miles, for appellees.

STIGER, J.—In August 1936, plaintiff, acting as attorney and trustee for bondholders, brought this suit for a writ of mandamus.

The following allegations appear in his amended and substituted petition: Prior to March 1, 1924, Chariton River Drainage District No. 1 was established. On or about March 1, 1924, the board of supervisors of Wayne county caused to be issued and

sold drainage bonds which were numbered serially. In 1929 and 1930, the bondholders, represented by plaintiff, purchased bonds No. 64 to No. 74, inclusive, in the principal sum of $7,400 due November 1, 1934, without notice of any defect and before any default in the payment of interest. The original assessment was levied in February 1924. This assessment was insufficient to pay the cost of the project and on September 10, 1925, an additional assessment was made under the authority of section 7479. There was an error in computation in the first assessment and as a result of this error the amount of the assessment was about $6,000 less than the cost of the project and the amount of the bonds issued when the additional assessment was made in September 1925. The error in the first assessment and other miscalculations had not been discovered by the board and the aggregate amount of both assessments was less than the cost of the project and amount of all the bonds issued. At all times the aggregate amount of the bonds has exceeded the total amount of the assessments. There was no default in any installment of interest on said bonds until on or about November 1, 1933; upon such default, plaintiff promptly had an audit made of the books of the drainage district, discovered thereby the reasons for such default, made demand as alleged in plaintiff's amended and substituted petition, and thereafter, and within three (3) years of such default, brought this action for a writ of mandamus, to compel the necessary levy and assessment. The bonds provide that:

"It is Hereby Certified and Recited: That all acts, conditions, and things required to be done in locating and establishing said Drainage District, in the making and levying of said assessment against the lands and highways benefited thereby, and precedent to and in the issuing of this bond were and have been legally had, done, and performed; and that the total amount of bonds issued on account of said Drainage District does not now exceed the assessment so levied therefor, unpaid at the time said bonds are issued, nor any legal limitations thereon.

"For the Performance of all the covenants, recitals, and stipulations herein contained, and for the collection and application of the said assessments and of the interest thereon, and such other and further assessments authorized or required to provide

for the prompt payment of this bond and interest hereon, the faith and resources of said County are hereby fully pledged.''

The petition further alleged there was a continuing duty of the board of supervisors to make additional assessments necessary for full payment of the bonds. The bonds were presented for payment and payment refused. The assessments remaining unpaid, tax sale certificates and real estate owned by the district are not sufficient to pay the bonds owing to plaintiff. It is the duty of defendants to levy a sufficient assessment to pay the bonded indebtedness. Plaintiff requested and demanded defendants to levy and collect a sufficient assessment, as by law authorized and required, to pay the said bonded indebtedness, but defendants refused to make such additional levy.

The lands in the drainage district have never been assessed in an amount necessary to pay the bonds or the cost of the project.

I. Ground 3 of the motion to dismiss reads:

''3. That the plaintiff is not entitled to the relief demanded for the reason that under the law the duty of the defendants herein to levy an additional assessment as prayed for in the plaintiff's amended and substituted petition and amendment thereto is not a mandatory duty but permissible only.''

This ground has reference to Code section 7509, which reads:

''7509 Deficiency levy—additional bonds. If any levy of assessments is not sufficient to meet the interest and principal of outstanding bonds, additional assessments *may* be made on the same classification as the previous ones. Additional bond issues may be made when necessary to complete full payment for improvements, by the same proceedings as previous issues.'' (Italics supplied.)

Appellant's first assignment is that the court erred in holding that an additional levy under said section was permissive only and not mandatory. The question is whether the word ''may'' is permissive or mandatory. We hold the word ''may'' should be interpreted as ''shall'' and that the statute is mandatory.

We are of the opinion that the policy and intention of the legislature is that (1) drainage bonds shall be payable solely from taxes assessed against the lands in the district and (2) that the board of supervisors shall make assessments sufficient to pay the cost of the project and all bonds issued. This policy is expressed in sections 7479, 7504, 7505, 7509 and other sections in chapter 353, 1935 Code, and also in chapter 358-F1 [chapter 358.2, Code, 1939].

Code section 7504 provides that a drainage bond shall be paid only from taxes levied and collected on the lands within the district.

Code section 7479 reads:

"7479 Levy for deficiency. If the first assessment made by the board for the original cost or for repairs of any improvement is insufficient, the board shall make an additional assessment and levy in the same ratio as the first for either purpose, payable at the next taxpaying period after such indebtedness is incurred subject, however, to the provisions of section 7484."

Code section 7505 provides that:

"In no case shall the aggregate amount of all bonds issued exceed the benefits assessed. Such bonds shall not be issued for a greater amount than the aggregate amount of assessments for the payment of which they are issued, * * *."

The above sections are, without question, mandatory.

Section 7505 states that drainage bonds shall not be issued for a greater amount than the aggregate amount of assessments. In order to insure compliance with this mandatory provision and the mandatory requirement in section 7504 that the bonds be paid solely from assessments on lands in the district, the legislature enacted section 7509 providing for a deficiency levy. Section 7509 states that if any levy of assessments is not sufficient to meet the interest and principal of outstanding bonds, additional assessments may (shall) be made on the same classification as the previous ones. Chapter 358-F1 [chapter 358.2, Code, 1939] provides proceedings for the levy of an additional assess-

ment if the prior assessments are not sufficient to pay defaulted drainage bonds.

The legislature, recognizing the assessments were the sole source of payment of the cost of the project and drainage bonds, enacted section 7479 which requires an additional assessment if the first assessment is insufficient to pay the cost, and, to protect bondholders, enacted section 7509 which compels the board of supervisors to make additional assessments sufficient to pay maturing bonds.

The legislature was not satisfied to demand only that bonds must not be issued for a greater amount than the aggregate amount of assessments (section 7505). It also justly required that if the assessments made were not sufficient to pay maturing outstanding bonds a deficiency levy must be made by the board of supervisors (section 7509). We cannot accept the construction that the legislature, in adopting section 7509, entrusted the payment of the bonds to the caprice or discretion of the board.

In Kelley v. Cedar Falls, 123 Iowa 660, 661, 99 N. W. 556, 557, it is stated in a statute or ordinance the word "may" can be construed in a mandatory sense " 'when such construction is necessary to give effect to the clear policy and intention of the Legislature; * * *.' "

In Downing v. City of Oskaloosa, 86 Iowa 352, 353, 53 N. W. 256, 257, the court said:

" 'The word "may" in a statute is sometimes used in a mandatory, and sometimes in a directory and permissive, sense. It has always been construed to mean "must" or "shall," whenever it can be seen that the legislative intent was to impose a duty, and not simply a privilege or discretionary power, and where the public is interested, and the public or third person have a claim *de jure* to have the power exercised. But it is only where it is necessary to give effect to the clear policy and intention of the legislature that it can be construed in a mandatory sense, * * *.' "

The following statement, which is unnecessary to the decision, appears in Western Bohemian Fraternal Association v. Barrett, 223 Iowa 932, on page 935, 274 N. W. 55, 56:

"Plaintiff urges that the section [7509] is mandatory, and that the word 'may' should be interpreted as if the word 'must' appeared, to effect the evident intent of the legislature that there be an additional levy under the circumstances shown by plaintiff. But it would appear to us that the language of section 7509 was used advisedly, and that the purpose was to afford the board of supervisors, or the trustees of a drainage district, a permissible procedure for remedying, if need be, a failure to carry out the mandatory provisions of the preceding section 7505. In event it is discovered that there has been a violation of the mandate found in section 7505, then section 7509 makes possible the levying of the necessary additional assessments."

We do not adopt the construction given section 7509 by the dictum in the Barrett case and hold that the section is mandatory.

■■■ II. Ground 4 of the motion to dismiss is, in part, as follows:

"That the bonds involved in this action expressly provide as follows:

" 'This bond is based upon and constitutes a lien upon and is payable solely out of the proceeds of the special assessments for benefits *heretofore* legally levied on the lands and highways benefited, and the said special assessments are hereby irrevocably pledged therefor.'

"That the contract set forth in said bonds having specifically stated that it was payable solely out of the proceeds of the special assessments for the benefits that were theretofore legally levied on the lands and highways benefited, the plaintiff is precluded from asking or demanding any further levy." (Italics supplied.)

Defendants stress the use of the word "heretofore" appearing in the bond.

This provision of the bond does not accurately conform to the provisions of section 7504 which requires a drainage bond to state that "it is to be paid only from taxes for levee and

drainage improvement purposes levied and collected on the lands assessed for benefits within the district for which the bond is issued."

To sustain the ruling of the trial court, defendants state that sections 7479, 7505 and 7509 did not become effective until July 1, 1924, and the bonds were issued in March 1924. They contend that these statutes permitting additional assessments apply only to bonds issued after their enactment and the bonds in question were payable only from the original assessment. We are not in accord with this proposition.

Section 1989-a27, Code Supplement, 1913, in force when the bonds were issued, provides "in no case shall the amount of bonds exceed the benefits assessed" and "should the proceeds of the tax when collected be insufficient to pay the principal and interest of bonds sold, a new apportionment of the tax may be made and other bonds issued and sold in like manner, to meet such excess of cost or shortage in the proceeds of tax." Section 7479, which requires an additional assessment if the original assessment is insufficient to meet the cost, and section 7509, which requires an assessment sufficient to pay outstanding bonds, amended and clarified section 1989-a27, and are clearly retrospective, each section referring either to existing drainage bonds (7509) or prior assessments (7479). See also chapter 358-F1 [chapter 358.2, Code, 1939].

III. Ground 4 of the motion to dismiss also states:

"The defendants further state that if the Board of Supervisors failed to levy a sufficient amount to pay said bonds, said failure on the part of said Board of Supervisors occurred more than ten years prior to the bringing of this action and therefore the plaintiff's cause of action is barred by the statute of limitations."

·Section 11007, subsection 4, reads:

"4. Against sheriff or other public officer. Those against a sheriff or other public officer, growing out of a liability incurred by the doing an act in an official capacity or by the

omission of an official duty, including the nonpayment of money collected on execution, within three years, * * *.''

This is not an action founded on written contracts (the bonds) the limitation on which is ten years under the provisions of section 11007, subsection 6. It is a suit against public officers growing out of the alleged omission of an official duty. Counsel refer to both limitations in argument. However, it is not material, for the purpose of this appeal, which statute was considered by the trial court because under defendants' theory the suit is barred under both limitations.

The contention of defendants is that appellant's cause of action accrued either in February 1924, when defendants omitted to perform their duty to levy an assessment sufficient to pay the cost of the improvement, or in September 1925, when the board in its second assessment made under section 7479 again failed to levy an assessment in a sufficient amount to pay the cost, at which time ''the right accrued to the plaintiff to demand that sufficient assessments be levied with which to provide funds for the payment of the bonds.'' Defendants rely especially on Stockholders Investment Co. v. Town of Brooklyn, 216 Iowa 693, 246 N. W. 826, and Lenehan v. Drainage District, 219 Iowa 294, 258 N. W. 91.

In Stockholders Investment Co. v. Town of Brooklyn, supra, the town issued special assessment certificates for a street improvement. The action was for damages for breach of statutory duty. The provisions of chapter 353, relating to levee and drainage districts, were not before the court for consideration.

In the case of Lenehan v. Drainage District, supra, drainage warrants were issued to the contractors as evidence of indebtedness for the cost of the project. Plaintiff, owner of some of the warrants, brought an action in mandamus to compel defendants to levy an additional assessment under section 7479 in an amount sufficient to satisfy the unpaid warrants. Plaintiff did not assert any rights under section 7509. The petition alleged that the warrants were to be paid from assessments levied against the property over a period of ten years as provided by law, that the assessments were insufficient to pay the warrants, and that the board refused to levy on request an assessment to make up the

deficiency. Defendants alleged in their amended answer that "the assessments levied over a period of ten years were for the payment of bonds issued and not for the payment of warrants; * * *'' etc. Appellants filed a motion to dismiss the amendment. The court states:

"For the purposes of their motion to dismiss, the appellants must concede the truthfulness of the above-quoted allegations in the appellees' amended answer. Consequently, it is apparent, under the amendment mentioned, that there was no assessment at any time out of which to pay the warrants in question. Necessarily, then, the three-year statute of limitations lapsed more than three years before the institution of the action for mandamus. * * * When determining this case, we do not decide what might be the result had the action been on a drainage bond or other obligation deferring payment over a period of years. Our discussion is limited to the facts raised under the motion to dismiss.''

In the Lenehan case, supra, no assessment had been made for the payment of the warrants. The payment of the warrants was not deferred as in drainage bonds and it was certain and definite long prior to the commencement of the action that no assessment had been made to pay the cost represented by the warrants and the court held that the case was barred by the statute of limitations, section 11007, subsection 4. The cited cases do not control the decision in this case.

In the instant case an assessment was made in an amount that would pay all but about $6,000 of the bonds issued. Appellant owned $7,400 of the bonds. In 1924 or 1925 appellant's bonds were not due. They were not due until 1934. All bonds were paid except the bonds of the appellant. The duty of the board, under section 7509, was to levy an assessment "to meet the interest and principal'' of the unpaid bonds.

As stated in section 7504, the bonds were *to be paid* from taxes assessed on the lands in the district. The prior assessments were insufficient to pay these outstanding bonds when they matured. Appellant's right, under sections 7504 and 7509, was to have the bonds paid when they matured from assessments on the land. His right to a deficiency levy under section 7509, that is, his

cause of action, accrued when the bonds matured in 1934. This action was commenced in 1936. The action is not barred by the statute of limitations.

IV. Another ground of the motion to dismiss is:

"That the matters and things alleged in the amended and substituted petition are no different in effect than the allegations of the original petition and the first amendment thereto, and that said first petition and first amendment thereto were demurred by these defendants and submitted to this Court on the 21st day of August, 1937, which demurrer was sustained and not appealed from, and that said ruling was an adjudication in this cause and is now the law of this case."

Appellant excepted to the rulings on the first and second motions to dismiss.

We have repeatedly held that a ruling on a demurrer or a motion to dismiss does not become the law of the case. As stated in Hansen v. Independent School District, 193 Iowa 417, 422, 186 N. W. 922, 924, 21 A. L. R. 260:

"A ruling on a demurrer in and of itself settles nothing. It becomes an adjudication only if the defeated party chooses to make it such."

In Watkins v. Iowa Cent. Ry., 123 Iowa 390, 395, 98 N. W. 910, 912, this court said:

"If, after a ruling on a demurrer, a party excepting to that ruling pleads over a mere repetition of the matter theretofore stated in the pleading demurred to, he does not, of course, waive the error in the ruling on the demurrer. By so doing he manifestly does not intend to waive the error in the ruling on the demurrer, if any there be. * * * He either does not plead over by reasserting the same matters, or, if he does, such pleading should not be held to be a waiver of the ruling theretofore properly excepted to. Our rules of procedure are not intended as a trap to catch the unwary. Of course, if no exception is taken to the ruling on the demurrer, and the party whose pleading is attacked makes no exception thereto, but pleads over, and the demurring

party moves to strike it, because a mere repetition, the only question then to be considered is the correctness of the ruling on the motion to strike. By failing to except to the ruling on the demurrer, the pleader accepts it as the law of the case, and the only ruling he challenges is the one on the motion to strike." See Back v. Back, 148 Iowa 223, 125 N. W. 1009, L. R. A. 1916C, 752, Ann.. Cas. 1912B, 1025; Myers v. Wendel, 198 Iowa 859, 200 N. W. 431.

We have examined all of the grounds of the motion to dismiss the amended and substituted petition and conclude that none of them sustain the ruling of the trial court. The case is reversed and remanded for modification of decree in harmony with this opinion.—Reversed and remanded.

MILLER, SAGER, BLISS, and HALE, JJ., concur.