ALLEN WHITFIELD, Appellant, v. PERRY D. SEARS et al.,
Appellees.

No. 46290.

JULY 27, 1943.

Whitfield, Musgrave & Selvy and Wilbur J. Bridges, all
of Des Moines, for appellant.

A. V. Hass, of Chariton, for appellees.

Smith, J.—This case has been before us on a former appeal from a ruling sustaining defendants' motion to dismiss plaintiff's amended and substituted petition as amended. Whitfield v. Grimes, 229 Iowa 309, 294 N. W. 346. There has been no change of plaintiff's pleadings since that appeal except for an amendment substituting successor supervisors as defendants. (Throughout this opinion when we refer to "defendants" the term will include, where the context requires, not merely the present defendants but also their predecessors in office.)

Upon remand defendants filed answer in three divisions designed to raise three defenses:

1. That although this action was commenced before the bar of the statute of limitations fell, plaintiff has since pleaded a new cause of action and said new cause of action is barred.

2. That it would now be inequitable to compel reassessment of the lands of the drainage district since there have been "numerous transfers * * * by reason of mortgage foreclosures, exchanges, tax sales, intervention of liens and subsequent assessments, descent and distribution and by divers other methods."

3. A general denial of the allegations of the amended and substituted petition.

The pleadings are voluminous but we deem it unnecessary to review them for the purposes of this appeal. The allegations of the amended and substituted petition as amended are sufficiently set out in our former opinion. Other pertinent pleadings will be mentioned as may become necessary.

I. Defendants claim the cause of action, as pleaded in plaintiff's amended and substituted petition, is barred by the statute of limitations. The decision of the trial court is expressly based on that ground. The first proposition to confront us concerns the availability of that defense in view of the former appeal. The chronology is significant.

When plaintiff filed his amended and substituted petition (March 25, 1938) the three-year period under the statute of limitations, section 11007(4), Codes of Iowa, 1931, 1935, had

already expired on November 1, 1937. Whitfield v. Grimes, supra. Defendants thereafter (September 15, 1938) attacked it by motion to dismiss which alleged:

"That if any actionable breach of duty has been committed by the defendants * * * which would otherwise entitle the plaintiff to the relief demanded * * * *in his amended and substituted petition* * * * that said breach was committed *more than ten years prior* to the commencement of this action and is barred by the statute of limitations." (Italics are ours.)

This motion was sustained January 26, 1939, and plaintiff given thirty days to plead over. On February 24, 1939, plaintiff amended, setting out the date of the first default in payment of interest and alleged that "thereafter, *and within three (3) years* of such default, [plaintiff] brought this action * * * "

Thereafter, on March 11, 1939, defendants again filed motion to dismiss, identical with the motion of September 15, 1938. Again the motion was sustained and plaintiff then appealed. We have re-examined the briefs and arguments of counsel on that appeal, with special reference to the claim under the limitation statute. Plaintiff argued then that the three-year statute did not begin to run until the maturity and default of the bonds. Defendants responded:

"It will be noted in the beginning of the argument on the statute of limitations that two periods are referred to, *but in the opinion of the defendants it makes no difference whether the statute of limitations is the ten year statute or the three year statute*. It is the claim on the part of the defendants, as set up in their motion to dismiss, that the breach of duty of the Board of Supervisors, if any, occurred more than ten years prior to the bringing of plaintiff's action." (Italics are ours.)

Defendants, with knowledge that there was controversy both as to which limitation applied and as to the time the statute began to run, elected to base their whole case on the proposition that the cause of action arose in 1924 when the

levy was made, and that it was therefore barred under either statute.

We decided against their contention and held that the cause of action accrued when the bonds matured in 1934, and that the three-year limitation applied. At that time we said, at page 317 of 229 Iowa, page 349 of 294 N. W.:

"This is not an action founded on written contracts (the bonds) the limitation on which is ten years under the provisions of section 11007, subsection 6. It is a suit against public officers growing out of the alleged omission of an official duty. Counsel refer to both limitations in argument. However, it is not material, for the purpose of this appeal, which statute was considered by the trial court because under defendants' theory the suit is barred under both limitations."

The pleadings of plaintiff were the same then as now. Defendants' motion to dismiss then urged, in effect, that the cause of action accrued "more than ten years prior to the bringing of this action and therefore the plaintiff's cause of action is barred by the statute of limitations." "This action" which they referred to was the present action. The "cause of action" then was the same as now. If there has been a new cause of action pleaded by plaintiff since the statutory dead line, November 1, 1937, it is the very "cause of action" they then referred to and attacked in their motion to dismiss. They were not contending then that it was a *new cause of action.* That is a theory now urged in view of our decision that the three-year statute governed and the "cause of action" accrued in 1934 and not in 1924. Having failed in their contention as to when the cause of action accrued, they now propose to relitigate the issue of the statute of limitations on another theory of a new cause of action having been pleaded since November 1, 1937. This they cannot do. Hall v. City of Shenandoah, 179 Iowa 1192, 1204, 1205, 162 N. W. 575.

Division 1 of the answer pleads no new facts. The whole record of pleadings prior to answer, in the same form as now, was before us on the former appeal. There has been no evidence offered in support of, defendants' present contention that there was a new cause of action pleaded. Our

decision on the former appeal that "the action is not barred by the statute of limitations" became the law of the case and no new fact record is presented to avoid it. The theory of a "new cause of action" is an afterthought.

Defendants had the undoubted right to urge the statute of limitations either "by motion to dismiss or in the answer." Section 11130, Code of Iowa, 1939. If they had failed by the first method and had taken no appeal, doubtless they could have again raised the same issue by answer. The decision of the trial court would not, in that event, have become the law of the case. McCord v. Page County, 192 Iowa 357, 184 N. W. 625; Whitfield v. Grimes, supra.

But in the instant case the motion to dismiss was sustained and the party aggrieved by the ruling stood on his pleading, allowed judgment to be rendered against him, and appealed from the decision of the trial court. The decision on that appeal is binding throughout the further proceedings in the case, binding not only upon the parties but also upon us. The issue cannot be retried now. Hall v. City of Shenandoah, supra; Kuhns v. Live Stock Nat. Bk., 138 Neb. 797, 295 N. W. 818.

Our conclusion makes unnecessary a discussion of the cases cited on the question of what constitutes a new cause of action.

■ II. Defendants pleaded that since the organization of the drainage district there have been changes of title of property within said district by reason of various transfers, lien foreclosures, etc., and that it would be inequitable to compel defendants to make a reassessment which "would avail little but litigation * * * and involve them in multiple actions to determine the priority of the reassessment lien as against the interests acquired by different parties * * *." In argument they refer to this defense as involving the "equities between landowners and bondholders."

The argument of defendants on this point is bottomed on the assumption that the "landowners have paid assessments which were adequate to take care of the cost of the project." This assumption begs the question. It goes to the very merits of the case, namely, Were the assessments, when levied, suffi-

cient to pay the principal and interest of the outstanding bonds? We know of no equitable principle that would absolve defendants from levying additional assessments *if required under Code sections 7509 and 7479.* No cases are cited by defendants enunciating such principle. We have held that the statute reserves to the board of supervisors at all times the power to impose necessary additional assessments, that the burden of this contingency necessarily rests upon every landowner subject to assessment in the district but that such statutory power does not operate as an encumbrance which would constitute a breach of covenants in a deed. Kleinmeyer v. Willenbrock, 202 Iowa 1049, 210 N. W. 447. We think it clear that anyone who acquires title to or interest of any kind in land which is in a drainage district does so charged with knowledge of the possibility of a reassessment within the period of the statute of limitations. There are no equities in his favor as against that contingency.

III. Defendants' general denial puts in issue the ultimate question to be determined: Were the assessment (1924) and the reassessment (1925) legally sufficient when made? It is certain that when the bonds matured, November 1, 1934, there were not sufficient funds to pay them. There is no dispute as to the existence of the shortage, and no serious dispute as to its causes. The controversy concerns rather the nature of these causes in relation to plaintiff's right to compel a reassessment. Was there an inherent insufficiency in the assessments as they were set up? Or is the shortage due to subsequent diversions of funds to other purposes, or failure to collect all assessments levied? In one case a reassessment should be made, in the other the resultant loss must fall upon the bondholders.

We are not greatly concerned over the argument as to which ''deficiency levy'' statute (Code section 7479 or 7509) applies to the case. In the Whitfield case we held these two sections were retrospective and that they ''amended and clarified'' section 1989-a27, Code Supplement 1913 (at page 316 of 229 Iowa, page 349 of 294 N. W.). They first appeared in the Code of 1924.

Section 7479 is perhaps more especially available to the contractor or material man to enforce a levy to meet the indebtedness due him. It requires an additional assessment if the original levy (under section 7477) ,proves insufficient to meet the *cost of the improvement*. Section 7509 requires an additional levy if any levy of assessment is not sufficient to meet *the interest and principal of outstanding bonds*. But the sole purpose of bonds is to furnish immediate funds for the "cost of the improvement," in anticipation of deferred installments of the tax levied for that same cost.

An insufficiency of funds to pay bonds arises if the amount of the original levy or levies (under sections 7477 and 7479) is insufficient to pay the cost of the improvement and if the proceeds of the deferred assessment are consequently used, in part, to make up the deficiency. In that event a relevy is proper. It really makes no difference whether we say it is under section 7479 or 7509. The relevy is to make good an *original insufficiency* of levy.

Of course, in the case of a shortage due to subsequent diversion of the proceeds of the assessment to some other purpose, or due to failure to collect the assessment from some landowner, there is no right to such additional levy. Hartz v. Truckenmiller, 228 Iowa 819, 293 N. W. 568; Western Bohemian Fraternal Assn. v. Barrett, 223 Iowa 932, 274 N. W. 55. Landowners who have paid their proportion of the cost of the improvement cannot be required to make good the default of other landowners or a deficiency caused by the erroneous use of the funds collected. The respective interests of landowner and bondholder are, of course, conflicting. It is the concern of the law to make sure that the proper balance is maintained between them.

With these fundamental principles in mind, let us examine the facts shown by the record. We see no reason to question the conclusions of plaintiff's expert witness as to the facts revealed by the books of the drainage district. He furnishes the only audit of said books and his testimony stands undisputed.

It seems clear there was an initial discrepancy of $3,516.86 between the total cost of the improvement and the amount assessed as benefits against the land in the district. This was

partly due to a reduction of $1,650, on appeal from the assessment against the land of the Chicago, Burlington & Quincy Railway Company. This reduction, of course, related back to the date of the assessment. The rest of the discrepancy was apparently due to items of preliminary costs advanced from the county fund but overlooked by defendants in making the assessments. The witness who made the audits and testified concerning the showing made by the books of the district has reduced the original figure of $3,516.86 to $3,025.26 by various credits not necessary here to analyze.

The net figure of $3,025.26 includes, among items of cost, one item of $625 which was paid in 1927 on account of what is called the Davis rock removal contract. Probably it was technically chargeable to maintenance rather than to original construction. It was paid, however, for the benefit of the district. It would have been the proper subject of an additional assessment for maintenance but was too small an item to warrant that expense.

We think the item should be treated as a loan or advancement, to be replaced, rather than as an unlawful diversion of funds. Equitable considerations justify its inclusion here as if it were a part of the original cost. There seems no fair reason why the landowners should escape this burden at the expense of the bondholders. The net amount of $3,025.26 should be treated as a deficiency as of the time of the original assessments. Bonds in an equivalent amount have borne interest since their issue.

It appears from the record that when the original assessment of $51,500 (reduced by cancellation of bonds to $51,300) was made, the deferred assessments amounted only to $45,145.59. This does not mean an original deficiency in levy of $6,154.41, but a loss of interest upon that amount, not foreseen and provided for by defendant board. Besides this, there were other interest losses due to the fact that the bonds and levies had different maturity dates. The bonds bore interest approximately six and one-half months longer than did the assessments. These interest losses are computed by the witness at $1,729.84 as of the date of trial. They were implicit in the situation existing when the assessments were levied.

Failure of defendants to guard against them constituted an insufficiency of the assessments that were levied. To provide against them would have required a greater levy. The landowners of the district have not paid this deficit.

There is another interest item to provide for—the interest on the unpaid bonds since they matured November 1, 1934. This does not mean interest upon all the bonds then in default, but only upon the amount of such default attributable to insufficiency of the previous assessments in the particulars we have pointed out. Computation of this item, as well as of the other interest items, must be made so as to arrive at the correct figure as of the date the new assessment spread becomes payable.

■ IV. No allowance of interest loss can be made to bondholders growing out of the fact that some landowners were erroneously permitted by the county treasurer to pay their assessments in full without interest after their levies were placed on the deferred list and after bonds were issued against them. The resolution of March 17, 1934, which set up the first bond issue, recited that of the total assessment ($71,674) previously made, $20,121.90 had been paid in or otherwise provided for. No bonds were issued against that part of the assessment. But the evidence shows that some of those landowners, against whose assessments bonds had been issued, were thereafter permitted to escape payment of interest by paying total assessments in lump sums. The bonds being noncallable, interest on the money so paid in was lost until it could be used to retire bonds as they became due. This loss was not due to an inadequacy of the assessment but to conduct on the part of the county treasurer's office in permitting such payments in violation of section 7512, Iowa Code 1924 (which became effective October 28, 1924), and even contrary to the implied prohibition of section 1989-a27, Iowa Code Supplement 1913, in force when the bonds were issued.

The county treasurer was not an officer of the district. Hartz v. Truckenmiller, supra. To permit this loss item to be made the basis of an additional assessment would be to require landowners who paid their assessments in full, as levied, to make good the failure of other landowners to do so and to

pay the loss caused by the wrongful conduct of the treasurer in permitting such evasion of payment of interest.

V. It appears from the record that there were certain assets of the district which defendants were to liquidate for the benefit of unpaid bondholders. The order to that effect was entered at the time of trial upon stipulation of the parties. The amount to be realized by an additional assessment in accordance with this opinion, to make good the insufficiency of the former levies, can only be ascertained when those assets are disposed of and proceeds applied, and when interest computations are brought forward to date of levy.

Order for writ of mandamus should issue requiring the defendants to take these steps and to make an assessment in such amount as may be found correct under the principles herein stated.

The decision of the trial court is hereby reversed and the case remanded for decree accordingly.—Reversed and remanded.

MULRONEY, C. J., and BLISS, HALE, MILLER, OLIVER, GARFIELD, and MANTZ, JJ., concur.