W. H. AMES et al., Appellants, v. BOARD OF SUPERVISORS OF POLK COUNTY et al., Appellees.

No. 46382.

JANUARY 11, 1944.

REHEARING DENIED MARCH 10, 1944.

H. L. Bump, of Des Moines, for appellants.

Stipp, Perry, Bannister & Starzinger, of Des Moines, for Paul Beck, appellee.

Francis Kuble, County Attorney, and Ralph D. Moore, Assistant County Attorney, for all other appellees.

HALE, J.—The Boards of Supervisors of Polk and Story counties on June 25, 1920, established a drainage district known as Polk-Story No. 4, extending into the two counties across their border line. The commissioners and engineer reported that the total acreage in the district was 1,078.88 acres and estimated the cost at $37,893, which later proved to be too low an estimate. Contracts for material and labor were let and the commissioners reported a schedule of assessments for benefits for the lands in both counties totaling $44,668.40, of which the share for Polk county was $37,717.50. On May 22, 1922, the Polk County Board of Supervisors passed a resolution which recited that the share of Polk county lands in the total assessment should be the above sum of $37,717.50, and that there had been paid into the treasury of the drainage district, or otherwise provided for, $14,282.54, leaving then unpaid and not provided for an assessment in the sum of $23,434.96, none of which was in litigation, and no one item of which was $20 or less in amount. Such resolution also provided for the issuance of $23,300 in drainage bonds against the assessment of $23,434.96, which bonds were to be paid over a period of ten years to retire the bonds, Nos. 1 to 24 inclusive. The bonds were issued and sold, and, so far as the records show, the proceeds applied on the cost of the improvement. The bonds were all paid except two, Nos. 22 and 23, for $1,000 each, with $210 of unpaid interest coupons and the interest on the bonds at six per cent from maturity on November 1, 1932.

The original assessments levied against the Polk county lands of $37,717.50 were all paid with interest. The two bonds not having been paid, the Board of Supervisors of Polk county,

on October 28, 1942, adopted a resolution in which they recited that two additional assessments had been adopted by the joint meeting of the Boards of Supervisors of Polk and Story counties, one for four and one-half per cent on December 17, 1925, and one for four per cent on April 30, 1930, which assessments Story county had assessed and collected, but that the same had never been spread or collected in Polk county. The resolution recited further that on June 15, 1931, the Polk county board had authorized the spreading of the assessments of four and one-half per cent and four per cent, respectively, but the same was never done by the auditor of Polk county; that bonds Nos. 22 and 23, which became due on November 1, 1932, were unpaid and also the interest thereon was delinquent; and directed that the assessments theretofore ordered be spread in order to pay said bonds and interest, making a total reassessment to be spread against the benefited property of eight and one-half per cent. The resolution further extended the maturity date on the two outstanding bonds to November 1, 1943. After the resolution was adopted and the reassessments made and spread upon the land, this action was brought to enjoin the collection of such assessments. It is thus apparent that there have been levied, assessed, and collected against the property owners in the district in Story county reassessments totaling eight and one-half per cent, but no corresponding assessment has ever been collected in Polk county.

The proposition relied upon by appellants for reversal, as stated by them, is that the assessments having been greater than the amount of the bonds issued, and the assessments having all been paid, no new assessments may be made to pay such bonds. There is no question but that assessments of this kind must be used solely for the purpose of payment of the improvement and cannot be diverted to other purposes. It is also true that the land within a district cannot be assessed for any greater amount than is necessary to pay the cost of such improvement. Section 7505, Code of 1939, and previous Codes. The only reason for the levy of additional assessments is in case the cost, when finally determined, is greater than the original estimated expense or is for repairs. When such condition occurs, then the board of supervisors is required to levy and collect additional assessments against the benefited lands. Sections 7479 and 7509, Code of

1939, which sections are the same as appeared in previous Codes, both provide for such a contingency, the former section reading:

"If the first assessment made by the board for the original cost or for repairs of any improvement is insufficient, the board shall make an additional assessment and levy in the same ratio as the first for either purpose, payable at the next taxpaying period after such indebtedness is incurred subject, however, to the provisions of section 7484 [which provides for payment by installments]."

Section 7509 provides:

"If any levy of assessments is not sufficient to meet the interest and principal of outstanding bonds, additional assessments may be made on the same classification as the previous ones. Additional bond issues may be made when necessary to complete full payment for improvements, by the same proceedings as previous issues."

Appellants argue that under sections 7505 to 7509 of the Code of 1939, which were, in effect, the same as the Supplement to the Code of 1913, and subsequent Codes, the issuance of bonds in excess of the amount of assessments made and levied is prohibited, and that section 7509 as now interpreted by the court means that if the assessments were not large enough when made to equal the amount of bonds issued, new assessments may be made, but if the assessments were sufficient, were large enough, were greater than the amount of the bonds, and if paid by the landowners, the landowners may not be assessed again to pay these bonds, and that such is really the only question in the case.

Hartz v. Truckenmiller, 228 Iowa 819, 293 N. W. 568, cited by appellants, does not support that theory. There the original levy and a subsequent ten per cent levy, not disputed, were sufficient to pay the bonds and the cost of improvement, but a loss was incurred by failure to collect certain assessments. The proceeds of the tax, if collected, would have paid the cost. It does not hold that the basis of the reassessment is the amount of the bonds rather than the cost of the improvement. Western Bohemian Frat. Assn. v. Barrett, 223 Iowa 932, 934, 274 N. W. 55, 56, also cited by appellants, does not apply here. In that case

it is said: "That the assessments were sufficient is not even questionable." In neither of these cases is there any showing that the issue of bonds was insufficient to pay the cost of the project. In Whitfield v. Grimes, 229 Iowa 309, 294 N. W. 346, appellants interpret our holding to have been that if the assessment was large enough in the beginning to cover the bonds, no new assessment may be made. Such was not our holding. We have recently, in the second appeal in the Whitfield case, Whitfield v. Sears, 233 Iowa 887, 892, 10 N. W. 2d 564, 567, reviewed a situation in most respects similar to the one in the case at bar. Justice Smith, in his opinion, states:

"We know of no equitable principle that would absolve defendants from levying additional assessments *if required under Code sections 7509 and 7479*. No cases are cited by defendants enunciating such principle. We have held that the statute reserves to the board of supervisors at all times the power to impose necessary additional assessments, that the burden of this contingency necessarily rests upon every landowner subject to assessment in the district * * *."

The opinion in that case concludes that there was an initial discrepancy in the amount of the original assessment and the cost of the improvement and order was made for writ of mandamus. This case distinguishes Hartz v. Truckenmiller and Western Bohemian Frat. Assn. v. Barrett, both supra, as cases in which the shortage of funds was due to subsequent diversion of the proceeds or failure to collect certain assessments.

II. Under the quoted sections of the Code, if the first assessment is insufficient to pay the cost of the improvement the deficiency may be made up by subsequent assessments. Such is the requirement of the statutes and our previous cases. So what is left to determine is, Were the original levy and assessment sufficient to pay the cost of the improvement? On the trial in the district court there was introduced in evidence a complete record of the district with the receipts and disbursements. In addition there were offered in evidence the reports of the examination made by the checkers from the state auditor's office, showing in detail all such receipts and disbursements, the first of such reports extending from the beginning of the drainage proceedings

to January 1, 1929, and the second extending from January 1, 1929, to February 20, 1942. The facts shown by these reports were not contradicted. The balance sheet of assets and liabilities in the second report shows assets of $162.38 in Story county, with no liabilities; and liabilities of $4,166.18 in Polk county, with no assets. The second report sets out the facts as we have heretofore detailed them regarding the assessments levied and the failure to collect such assessments in Polk county, and states that had the eight and one-half per cent total reassessment in Polk county been spread and collected the amount realized would have been sufficient to retire the outstanding bonds when they matured. With this conclusion we agree.

III. As in the second Whitfield case, supra, the difficulty here arises from the fact that there was an initial discrepancy between the amount of the assessment and the bonds issued thereunder and the total cost of the improvement. As we read the record, it is not shown that the amounts realized from the sale of the bonds, and the reassessments for the payment of such bonds, were not properly applied on such payments. No showing is made as to any misapplication of funds. We have examined the list of warrants issued and they appear to have been thus applied. The discrepancy and the cause thereof are indicated on page 2 in the first report of the checker for the state auditor, filed in the office of the county auditor of Polk county on September 30, 1929:

"COST OF DRAIN—Warrants have been issued for the construction of the Drain amounting to $43,323.07 and for repairs amounting to $70.81, making a total of $43,393.88. Interest has been paid on warrants totaling $3,611.51. Interest on bonds paid and yet to be paid amount to $10,436.00. Total cost of the Drain amounts to $57,441.39."

These findings of the accountants are borne out by the reports. The figures are self-explanatory. In making the estimate of cost it is indicated that interest was not taken into consideration—especially interest on warrants—and that the estimated cost to Polk county and the assessments and bond issue based thereon were too small. If the original levy was too small, as appears from the record, it was the duty of Polk county to correct

the erroneous estimate by making a proper reassessment to provide for the additional cost and the bonds issued on the basis of the unpaid installments of such cost, as was done in Story county.

IV. Appellants devote some time in their reply argument to the statute of limitations. This question was not touched upon nor discussed in their first brief and argument. It was merely mentioned, but not argued, in appellees' brief and argument as a part of the history of the action. Appellants in their opening brief and argument state as their objection that the assessments having been greater than the amount of the bonds issued, and the assessments having all been paid, no new assessment may be made to pay such bonds. The question of limitations, not having been raised nor argued in appellants' opening brief, need not here be considered. Cohen v. Hayden, 180 Iowa 232, 245, 157 N. W. 217, 163 N. W. 238; Patton v. Lund, 114 Iowa 201, 206, 86 N. W. 296; and Lorimer v. Hutchinson Ice Cream Co., 216 Iowa 384, 249 N. W. 220. Such is the general rule. 4 C. J. S. 1914, section 1333, states:

"A point raised for the first time in the reply brief will not be considered by the appellate court." Citing, among other cases, Luckenbill v. Bates, 220 Iowa 871, 878, 263 N. W. 811, 103 A. L. R. 252; and Fisher v. McCarty, 197 Iowa 369, 371, 195 N. W. 608.

It is our conclusion, as hereinbefore set out, that the holders of bonds Nos. 22 and 23 are entitled to be paid, so far as the proposed levy and reassessment are concerned. Otherwise, the landowners in Story county would have paid a greater proportionate share of the cost of the improvement, and the appellants, although receiving corresponding benefits, would not be assessed in proportion. It would be inequitable that the bondholders would not be compensated for the benefits thus received. Holding, as we do, that the proceeds of these bonds were used in the cost of the improvement, we see no good reason why such cost should not be equitably collected from the owners of the property for whose benefit such expenditures were made. We hold that the district court was right in dismissing appellants' petition, and the ruling thereon should be, and is, affirmed.—Affirmed.

All JUSTICES concur.