O. N. GJELLEFALD, Appellant, v. A. L. HUNT et al., Appellees.

MUNICIPAL CORPORATIONS: Contracts in General—Competitive Bids —Void Provision. A clause inserted in a public improvement contract, to the effect that, if rock or quicksand is encountered, the contractor shall be paid on the basis of cost plus a named percentage, is *void* when both the specifications and the advertisement for bids are silent as to such contingency. (See Book of Anno., Vol. 1, Sec. 7463.)

Headnote 1:   19 C. J. p. 689 (Anno.)

Headnote 1:   19 R. C. L. 1071.

*Appeal from Kossuth District Court.*—F. C. DAVIDSON, Judge.

SEPTEMBER 21, 1926.

Action in equity, to recover a balance due on a contract for construction of a drainage ditch in Kossuth County. From a

decree in favor of the defendants, the plaintiff appeals.—*Af-firmed.*

*Senneff, Bliss, Witwer & Senneff,* for appellant.

*T. P. Harrington,* for appellees.

ALBERT, J.—I.  Appellant alleges that he entered into a written contract with the appellees to furnish the material and labor and construct a drainage ditch in Drainage District No. 157 in Kossuth County; that he has completed the said ditch; that the same has been accepted by the board of supervisors; and that there is a balance of $6,271.50 due on the contract. He asks for an order commanding the county auditor to issue a warrant on the county treasurer of said county for said balance.

The board of supervisors filed a separate answer, in which they admit Paragraphs 1, 2,.3, 4, 5, and 6 of the petition.  This admission is not very enlightening, because the petition is not divided into numbered paragraphs, and it is difficult to determine what admissions are made by this statement in the answer. This matter, however, in view of the turn the case took, may not be material.  Appellees deny that appellant encountered quicksand in carrying out his contract; admit that a certain purported contract, a substantially correct copy of which is attached to the petition, was signed, according to the purport of said copy; admit that the engineer appointed by the board inspected the work, and made monthly estimates; but deny that said estimates were approved by them.  They admit that the estimates were paid by warrants, but say that the warrants issued were far in excess of the contract, and that said excess was paid without authority, and in violation of law, and that, therefore, the warrants are wholly void.  They allege that the "quicksand" clause contained in the contract was never rightfully or with authority or legally inserted in said contract.  They deny the existence of any power or authority or valid obligation whereby the funds of the district could lawfully be used in paying "actual cost plus 15%" for work done through quicksand.

In their cross-petition against appellant, appellees ask to recover the alleged excess, amounting to $8,288.65, already paid appellant, and allege, as basis therefor, that the contract in con-

troversy was drawn by a clerk in the office of the auditor of Kossuth County, without authority of law, and without the knowledge or authority of the appellee board; that there was inserted in said contract a clause stating that, if "quicksand and rock are encountered, contractor to receive actual cost plus 15%." They say that this clause was wholly illegal; that it was inserted without authority of law, and without the authority or knowledge of the appellee board; that it is in violation of the statutes of the state, and is fraudulent and void as to these appellees. They allege that the total amount appellant was legally entitled to receive for material furnished and work done was $15,232.63, and that he was paid $23,521.28; and they seek to recover the difference between these two sums. They allege that the bid submitted by appellant, which was accepted by the board, contained no clause or provision entitling appellant to receive "cost plus 15%" for any work, whether done in quicksand, rock, or otherwise; and that such clause was never agreed upon, and was never mutually intended between the parties, but was inserted by mistake in drawing the contract. They seek to have the contract reformed by striking out the words "quicksand and rock are encountered, contractor to receive actual cost plus 15%."

By way of two amendments to their answer, they replead matters already stated herein, and set out the public advertisements for bids. They state that appellant filed a bid thereunder, which was accepted by the board, and that it was therefore ordered by the board that the contract be entered into, as authorized by law; that the contract was drawn by the deputy auditor or drainage clerk of Kossuth County, without the knowledge or authority of the board of supervisors; and that said clerk, with appellant, caused said clause to be inserted in said contract; that the contract, when so executed, was signed by the county auditor and the chairman of the board of supervisors. They allege that the engineer in charge, in issuing the estimates based upon the provision of the contract in dispute, issued estimates far in excess of what appellant was entitled to receive, and that the county auditor of said county, without authority or knowledge of the board of supervisors, issued drainage warrants for such illegal and excessive sum.

Appellant, by way of amendment to his petition, says that

the contract sued on herein provided that, "should there be any difficulty between the parties hereto as to the construction of any of the provisions of this agreement, including the plans and specifications hereinbefore made, the part thereof relating to the work to be done, such differences should be referred to the engineer employed by the party of the first part in charge of the work, and his decision shall be final for both parties;" that he relied on the contract, and proceeded with the work; that, as the work progressed, the engineer examined the same and determined that part of the work was of the character that would come within the provision of the contract which called for payment on the basis of 15 per cent plus; that the monthly estimates of the engineer, from time to time, were based thereon, and appellant was paid 80 per cent, as provided by law, on said estimate; that appellant relied on the construction so placed by the engineer, and spent a large amount of time and labor, as set forth in the petition; and that appellees are now estopped from denying the correctness of the construction and the determination fixed by the engineer.

Appellant, by way of reply to the cross-petition of appellees, says that his bid, as submitted, contained a clause which read, "over-depth scheduled and quicksand and rock specifications same as my contract in 5-87;" that the specifications on Contract 5-87 were made a part of that contract, and Contract 5-87 contained the following provision: "Where quicksand or solid rock are encountered * * * the contractor shall receive actual cost plus 15% for all labor and material used." He says also that the contract entered into in this matter was based upon the bid thus submitted by appellant, and with the full and complete understanding of the parties.

Part of the original answer that we have set out was Division 2 thereof. It is stipulated by the parties and ordered by the court that a separate trial be had on the issues that are raised in Division 2 of the original answer, and in the amendment to the answer and cross-petition filed September 3, 1923. The first question discussed relates to the validity of the provision in said contract controlling payment where quicksand or rock is encountered.

The attack on the validity of this clause of the contract comes from two angles. The first involves wholly a fact ques-

tion; the second, a law question. Under the first of these propositions, it is the claim of appellees that, at the time the bid was submitted, it contained no provision whatever covering this matter, and it is intimated that the same was placed therein after the contract was signed. It is claimed that appellees never consented, agreed, or understood that said clause was to be contained in said contract. Hence they say that said clause was never a part of the contract actually made.

The board of supervisors of Kossuth County consisted of three members, at the time of the controversy herein. Anderson, who signed the contract, was chairman of the board, and the other two members were Tjaden and Hopkins. Anderson was dead at the time of the trial, in September, 1924. The contract was let in August, 1919. Hopkins testified that he was a member of the board when the contract was let. He says that the bids were read off by the secretary. As to the quicksand and rock clause, he says:

"I have no recollection of that. It might have been read, for all that, but I have no recollection."

He does not remember whether the contract was presented to the board and considered by it or not. He says that he never examined the contract while he was a member of the board, and that he did not know that the contract contained a clause about sand and rock. On cross-examination, he says:

"The bid [of appellant] may have been read with reference to quicksand. I do not recall."

He was then asked this question:

"Q. You might have known what was written in the contract? A. Well, at the time I might. I might have known that the engineer placed the construction upon that, that, when quicksand was encountered, the contractor was to be paid cost, plus 15 per cent. I won't say that I didn't know that. The monthly estimates filed by the engineer are sometimes examined by the board of supervisors."

Tjaden testified that he was a member of the board of supervisors in 1919. His testimony is similar to that of Hopkins.

The bid of appellant was introduced in evidence, and it contains the clause, "over-depth schedule and quicksand and rock specifications the same as my contract in Drain 5-87." The contract in 5-87 was introduced, which made a part of it the

specifications in that drainage district. It was provided in said specifications that, "where quicksand .or solid rock are encountered * * * the contractor shall receive actual cost plus 15% for all labor and material used." At the time appellant filed his bid, no reference was made, either in notice for bids or in resolutions for specifications, to the question of payment in case quicksand or rock should be encountered.

The bid of appellant was accepted and contract ordered by the board in the forenoon. It was one of the requirements that the contract should be made within ten days after acceptance of the bid. Immediately after the contract was awarded, Wendt, the auditor, and appellant retired to the auditor's office, where Wendt dictated the contract, and Bertha Johnson, deputy auditor, who was a stenographer, wrote it. Anderson, the chairman of the board, was in the auditor's office, waiting to sign the contract on behalf of the board. It was after 12 o'clock noon when the contract was completed. When they neared the end of the contract, appellant called attention to the fact that it was to contain the same provisions with reference to sand and rock as his contract in Drain 5-87. The auditor, who had appellant's bid before him, went to the records in 5-87, and from them dictated the sand and rock provision now found in the contract herein. Appellant, the county auditor, and the chairman of the board then signed it.

Evidence on the claim of appellees that appellant's bid, at the time it was filed, contained no reference whatever to "actual cost plus 15%" for construction where sand or rock was encountered, is wholly wanting, except for the bid itself, which is before us. It shows that the part referring to this matter was interlined, and in different ink. Appellant testifies that he made out his bid the night before, and that, when he went to the courthouse to file it, he re-read it, discovered the omission, and then inserted it, before filing the bid. The evidence in relation thereto is undisputed, and the conduct and acts of all the parties concerned tend to corroborate him in this respect; and we feel that the evidence is wholly insufficient to sustain the claim of appellees that the bid was changed after it was filed.

It is equally true that the evidence is wholly insufficient to sustain the claim that it was not intended and understood between these parties that the disputed clause was to be a part of

the contract. It therefore follows that, as to the fact situation which it is claimed should avoid this clause of the contract, appellees have wholly failed to sustain the burden of proof resting on them.

II. The second question is more troublesome. Briefly stated, it is urged that the board of supervisors was wholly without power or authority, under the law, to insert in this contract the provision for payment in case work was done through quicksand or rock. As heretofore noted, the specifications in this drainage district contained no provisions with relation to this matter; neither was there any reference made to it in the advertisements for bids. A case involving a contract in almost identical terms with the contract under consideration, so far as the sand clause is concerned, is *Busch v. Joint Drainage District*, 198 Iowa 398, where many cases are cited holding that a contract containing this clause is valid; yet that case is hardly applicable to the case before us. First, the *Busch* case is an action brought by property owners whose land is to be assessed; and secondly, the specifications in that drainage district, together with the advertisements for bids, provided for such a clause. These differences between the *Busch* case and the instant case are such that it cannot be said that the *Busch* case is controlling in the case at bar. In the *Busch* case, all bidders bid on the same proposition. This was not true in the case at bar.

The whole theory of awarding public contracts to the lowest bidder, after advertising therefor, is to protect the interest of the property owners, and to create competition between bidders, to the end that the work may be done as cheaply as possible. In order that such bidders shall be able to compete on equal terms, there must be established in advance a fixed basis for comparison of bids, so that all may bid on the same thing. Therefore, the advertisements for bids, or at least the specifications prepared in advance, should be definite and explicit, to the end that each bidder may prepare his bids intelligently on a common basis. *Hannan v. Board of Education*, 25 Okla. 732 (30 L. R. A. [N. S.] 214, and note); *Chippewa Bridge Co. v. City of Durand*, 122 Wis. 85 (99 N. W. 603). In *Diamond v. City of Mankato*, 89 Minn. 48 (61 L. R. A. 448), the Supreme Court of Minnesota said:

"The law is well settled that where, as in this case, munic-

ipal authorities can only let a contract for public work to the lowest responsible bidder, the proposals and specifications therefor must be so framed as to permit free and full competition. Nor can they enter into a contract with the best bidder containing substantial provisions beneficial to him not included in or contemplated in the terms and specifications upon which bids were invited. The contract must be the contract offered to the lowest responsible bidder by advertisement [citing cases]. This rule should be strictly enforced by the courts; for, if the lowest bidder may, by an arrangement with the municipal authorities, have incorporated into his formal contract new provisions beneficial to him, or have onerous ones excluded therefrom which were in the specifications upon which bids were invited, it would emasculate the whole system of competitive bidding. It would also lead to abuses, by opening wide the door of opportunity to award the contract to a favorite or generous contractor,—generous at the cost of the taxpayer. To secure such a result, it would only be necessary to make the terms and specifications upon which bids were invited burdensome for bidders, and for the favored one to make his bid upon the secret understanding that such terms would be modified in making the formal contract."

Additional stipulations contained in municipal contracts which were not mentioned in the published notice for bidding, and which constitute a material change, and therefore a departure from the basis of bidding, invalidate the contract. *Inge v. Board of Public Works,* 135 Ala. 187 (93 Am. St. 20), in which case it is said:

" 'To require the bids upon one basis and award the contract upon another would, in practical effect, be an abandonment of all bids' [citing *Wickwire v. City of Elkhart* (Ind.), 43 N. E. 216; *People v. Board of Improvement,* 43 N. Y. 227; *Shaw v. City of Trenton,* 49 N. J. Law 339 (12 Atl. 902)]. * * * To permit such in the awarding of public contracts by public officers would be to open wide the door for favoritism, and defeat the thing which the law intended to safeguard in requiring the contracts to be let upon bids made on advertised specifications. It is unimportant whether the additional stipulation contained in the contract awarded to one who is not the lowest responsible bidder be in itself an advantage to the city or not; if it constitutes a material change, and, therefore, a departure from the

basis of the bidding, and becomes an element or consideration in the determination of who is the lowest and *best* bidder, it will invalidate the contract entered into.''

See, also, *Bolton v. Gilleran,* 105 Cal. 244 (38 Pac. 881), and *McBrian v. City of Grand Rapids,* 56 Mich. 95 (22 N. W. 206).

It is a well known fact that, in certain parts of this state, in the laying of tile or the digging of open ditches, quicksand is often encountered, and every bidder is confronted with this fact. If this condition is provided for in the notice and specifications, as it was in the *Busch* case, then all bidders stand on an equal footing; but in the case at bar, it was not provided for. It is evident that appellant had an advantage over the other bidders, who did not cover this question in their bids. This was prejudicial to the drainage district. His bid was not responsive to the call, and therefore will not warrant this clause in the contract; hence, the board had no authority, under the law, to inject into said contract the clause of which complaint is made.

Under the stipulation and agreement of the parties herein, we are limited in our discussion to the lone questions above discussed. We do not have before us the questions of whether or not appellee board is estopped from claiming that the contract was *ultra vires,* whether or not appellant is entitled to recover on a *quantum meruit,* or whether or not, under the facts alleged, recovery can be had by the board. All of these questions are withheld from our consideration by agreement of the parties, and hence we express no opinion on any of them.

The decree of the district court reads, in part, as follows:

''It is ordered, adjudged, and decreed that the contract between the plaintiff and the defendant board of supervisors for the construction of the improvement in Drainage District No. 157 * * * be and the same is hereby reformed by striking and eliminating from paragraph numbered 'three' thereof the following words and figures, to wit: 'Quicksand and rock are encountered, contractor to receive actual cost plus 15%.' And it is found, ordered, adjudged, and decreed that the said words and figures so eliminated are not and never were legally a part of said contract, and that the said contract shall be construed, enforced, and performed as if said words and figures were never contained therein.''

From the wording of this part of the decree we are unable

to say whether the court held as it did because the evidence and the facts introduced show that such clause never was a part of the actual agreement, or whether it so ruled because, as a matter of law, the board had no right to make such contract. Our holding is that the court was not warranted in finding, under the facts and evidence, that the sand clause was not a part of the agreement actually made between these parties, but we hold, as a matter of law, that the quicksand provision is void because of want of authority on the part of the board to make such an agreement.—*Affirmed.*

DE GRAFF, C. J., and EVANS and STEVENS, JJ., concur.