Frank R. Danielson, Appellant, v. A. B. Cline et al., Appellees.

No. 46367.

December 14, 1943.

Ralph H. Munro, of Fairfield, for appellant.

Thoma & Thoma, of Fairfield, and Daniel T. Sullivan, of Council Bluffs, for appellees.

Miller, J.—This is an action to quiet title. Plaintiff owns certain lands within Cedar Drainage District No. 6 in Jefferson county. On October 10, 1928, special assessments were levied thereon for the construction of said drainage project. On November 19, 1940, additional assessments were levied. The assessments on plaintiff's lands were not paid. Plaintiff asserted that the assessments did not constitute valid liens upon his lands and prayed for a decree to that effect. Defendants as-

serted and the court found that each assessment was a valid lien. The decree dismissed the action. Plaintiff appeals.

The issues presented by the pleadings are stated in general terms. The record made at the trial is voluminous. However, the propositions asserted by plaintiff-appellant as grounds for reversal at our hands clarify the situation and narrow the scope of our inquiry considerably. The original assessments are claimed to be void for the following reasons: Before a valid contract for the construction of the ditch could be let, the county engineer was required to report to the county auditor the probable cost of the improvement; the board was required to find that the cost thereof was not excessive and to give notice to bidders specifying the approximate work to be done; these requirements were not met unless the engineer ascertained how much solid rock had to be removed; the engineer did not attempt to ascertain anything in regard to solid rock and stated that he did not know whether or not rock would be encountered, or how much, if any. The additional assessments are claimed to be void because attempt was made to levy them pursuant to section 7479, Code, 1927, and the board failed to comply with the provision of that section that the assessments be "payable at the next taxpaying period after such indebtedness is incurred * * *." The trial court found no merit in either contention. We agree with the trial court.

I. It will be noted that, as to the original assessments, the establishment of the district is not challenged, only the validity of the contract for the improvement. That challenge is not made by way of appeal, authorized by sections 7513 and 7515, Code, 1927, but in a collateral attack, made some twelve years after the contract was let. Such a challenge can succeed only if the contract was let in such an irregular manner as to render it void. Chicago, M. & St. P. Ry. Co. v. Phillips, 111 Iowa 377, 380, 82 N. W. 787, and cases cited.

The plaintiff's contention that the contract is void is predicated upon the clause relating to the removal of rock in the construction of the ditch. The plaintiff contends that such clause renders the contract wholly void. The trial court determined that the rock clause in the contract was void, that the contractor could not have recovered anything for the work

done under the rock clause; that the clause was separable, however, so that the rest of the contract was not jeopardized by its invalidity, and, since in fact the contractor did not recover anything under the rock clause, the collateral attack by plaintiff could not be sustained. The crux of the inquiry is, ''Was the court right in holding that the rock clause was separable and the contractor did not recover anything under it?'' We answer, ''Yes.''

The essential facts upon which plaintiff relies to sustain his contention that the contract is entirely void are the following: W. L. Hollrook was originally employed as civil engineer. He estimated the cost of the improvement as follows: ''560,000 cu. yds. @ 7c, $39,200.00; Right of way, 10,800.00; Engineering, 7,500.00; Incidentals, 10,000.00; Total, $67,200.00 [$67,500].'' Hollrook died and W. A. Griffith was employed as engineer. His estimate was as follows: ''560,000 cu. yds.@ 8c, $44,800.00; Right of way, 10,800.00; Engineering, 7,500.00; Incidentals, 5,000.00; Total, $68,100.00.'' On June 13, 1928, the board determined that the cost and expense of the improvement was not a greater burden than should be justly borne by the lands benefited and that said District No. 6 should be established as set forth in the engineer's report. The notice to contractors and the plans and specifications did not specify how much, if any, of the 560,000 cubic yards excavation would contain rock. The notice to contractors attached to the form of contract in the specifications provided: ''The total amount of the excavation is estimated at 560,000 CY cubic yards, supposed to be earth consisting of silt and clay but the Contractor must satisfy himself as to the classifications.'' Ten bids were submitted. At the time of the letting a contractor raised the question about rock. The engineer did not know what, if any, rock would be encountered. The contractors added to their bids provisions relating to rock.

Briggs & Drew bid $0.079 per cubic yard for dirt, $1 for loose rock, $2.50 for solid rock; L. E. Sternberg bid $0.0865 for dirt, with the price for rock ''to be mutually agreed upon''; C. E. Walker bid $0.105 for dirt, $0.75 for loose rock, $3 for solid rock; J. H. Boyce Sons Company bid $0.072 for dirt, $2.25 for rock; Matthews Brothers Construction Company bid $0.0694 for dirt, $2.50 for rock; Callahan-Walker Construction Com-

pany bid $0.0724 for dirt, $1.90 for material requiring blasting; Fred M. Crane bid $0.10 for dirt, $3.50 for rock requiring blasting; E. L. Hatton bid $0.0824 for dirt, $2 for rock; J. W. Boyer bid $50,000 for excavation and added "Rock $3.00 per yd."; Jack Boyne Construction Company bid $0.072 per cubic yard for excavation, and added, "Rock Clause. Should we strike rock the following prices are to be charged for same. Solid Rock 2.50 pr. cu. yard, Loose Rock 1.50." The contract was awarded to Jack Boyne Construction Company. The work was completed March 14, 1930. The first assessment was made by the board on October 10, 1928, based upon the engineer's estimate, and was for $59,757.34. This assessment was insufficient to pay the cost of the improvement. Rock was encountered in three places. In one place, 3,490.4 cubic yards of solid rock were excavated; in another, 1,633.12 cubic yards were excavated; in a third, considerable rock was left in the bottom of the ditch.

In contending that the foregoing facts show that the contract between the district and Jack Boyne Construction Company was void and the assessments levied to pay the cost of the improvement likewise void, plaintiff relies upon several former decisions of this court.

In the case of Gjellefald v. Hunt, 202 Iowa 212, 210 N. W. 122, a clause in a contract for construction of a drainage ditch to the effect that if rock or quicksand is encountered the contractor shall be paid on a basis of cost plus fifteen per cent was held to be void when the specifications and advertisement for bids were silent on such contingency. In Chicago, R. I. & P. Ry. Co. v. Town of Dysart, 208 Iowa 422, 223 N. W. 371, a clause of a contract for construction of a sewer, which contained a provision for construction of a lift station on a cost-plus basis, was held to be invalid because the specifications and notice to bidders were silent as to any such provision. In Coggeshall v. City of Des Moines, 78 Iowa 235, 41 N. W. 617, a paving contract was held to be void and special assessments levied to pay for it could not be enforced because the notice to bidders was too vague and indefinite as to materials to be used. In Comstock v. City of Eagle Grove, 133 Iowa 589, 594, 595, 111 N. W. 51, 53, a contract to construct a sewer was held to be void

and special assessments to pay for it could not be enforced because notice of the proposal for bids was not published ten days in advance of the letting. In Bennett v. City of Emmetsburg, 138 Iowa 67, 74, 115 N. W. 582, 586, a sewer contract was held to be void and assessments to pay for it could not be enforced because the notice to contractors was too vague and indefinite as to the manner of construction. In Jackson v. City of Creston, 206 Iowa 244, 251, 220 N. W. 92, and Johnson County Sav. Bk. v. City of Creston, 212 Iowa 929, 231 N. W. 705, 84 A. L. R. 926, paving contracts were held to be void because not submitted to competitive bidding.

To apply the foregoing pronouncements to the facts herein, it is important to bear in mind the purpose of the statutes relied upon. In the case of Bennett v. City of Emmetsburg, supra, we stated as follows:

"This statute is mandatory also, and noncompliance therewith, if made to appear, must result in a denial of jurisdiction. The plain purpose is to avoid favoritism, and to secure the most liberal bidding on works of improvement to be constructed at public expense."

In Comstock v. City of Eagle Grove, supra, we stated as follows:

"It is general, if not universal, thought that competition in bidding is necessary to prevent favoritism, corruption, extravagance, and improvidence, and to insure economy in connection with the making of contracts for municipal improvements. And, as competition is not possible except through publicity, the requirement for publication of notice inviting bids must be regarded as an essential preliminary to a contract."

In the case of Gjellefald v. Hunt, supra, a special provision for the contingency of quicksand was held to be void, this court stating (202 Iowa 212, 220, 210 N. W. 122, 126), as follows:

"It is a well known fact that. in certain parts of this state, in the laying of tile or the digging of open ditches, quicksand is often encountered, and every bidder is confronted with this fact. If this condition is provided for in the notice and specifi-

cations, as it was in the Busch case, then all bidders stand on an equal footing; but in the case at bar, it was not provided for. It is evident that appellant had an advantage over the other bidders, who did not cover this question in their bids. This was prejudicial to the drainage district. His bid was not responsive to the call, and therefore will not warrant this clause in the contract; hence, the board had no authority, under the law, to inject into said contract the clause of which complaint is made.''

Defendants contend that the rules applied in the cases cited by plaintiff should not be considered controlling here because the record shows that there was competitive bidding here with no favoritism. There were ten bidders. Each was advised that the approximate amount of excavation was 560,000 cubic yards, which was supposed to be earth consisting of silt and clay but the contractor had to satisfy himself as to the classifications. When the question of rock was raised each contractor was permitted to and did make special provision for rock excavation. There was no favoritism such as we condemned in Gjellefald v. Hunt, supra. There was competitive bidding. It is contended that any irregularity in the procedure did not thwart the purposes of the statute and was insufficient to render the contract void and the assessments to pay for it uncollectible. Reliance is had upon Busch v. Joint Dr. Dist., 198 Iowa 398, 198 N. W. 789. The argument is persuasive. But we need not decide the question. The trial court was clearly right for another reason.

The engineer testified that approximately 5,000 cubic yards of solid rock were excavated at a cost of $12,500. The warrants that were issued to the contractor were negotiated to the City National Bank of Council Bluffs and suit for their collection was commenced, resulting in a compromise whereby the bank accepted less than the amount due on the warrants by more than $12,500. The rock clause is the only defect asserted to exist in the contract. The trial court held that the district was not required to pay any additional price because of the rock clause and that, the contract being valid in all other particulars, the assessments to pay the balance of the cost of the improvement cannot be questioned in this action.

In the case of Gjellefald v. Hunt, supra, only the quicksand clause was held to be invalid. In the case of Chicago, R. I. & P. Ry. Co. v. Town of Dysart, supra, we followed the Gjellefald case and held that the provision for a lift station on a cost-plus basis was invalid. But only that provision was struck down. The balance of the contract was sustained, the order of this court being stated (208 Iowa 422, 430, 223 N. W. 371, 374) as follows: " * * * the original assessment of the city council should be and is reinstated, except there is to be deducted therefrom that portion of the levy against appellee's property made for meeting the cost of the lift station."

In the recent case of Iowa Electric Co. v. Town of Cascade, 227 Iowa 480, 486, 288 N. W. 633, 636, 129 A. L. R. 758, we held that a provision in a contract for the erection of an electric-light plant fixing a minimum scale of wages was in violation of the provision for competitive bidding but that it did not render the contract void because the cost was not increased thereby, stating as follows:

"The difficulty with appellant's position under the record herein lies in the fact that the total labor cost did not exceed 20 per cent of the cost of the improvement and the provisions in the specifications for a minimum scale of wages was inserted as a condition precedent to the securing from the federal government of a grant of 45 per cent of the cost of the improvement. * * * Since the grant was over twice the amount of the total labor cost on the project, the provision in the specifications for the payment of a minimum wage scale could not possibly be considered as having increased the cost to the users of electricity. The reason for the application of the rule, for which appellant contends, is absent. The court was warranted in refusing to apply the rule herein, and in holding that the town could comply with the condition that was attached to the grant."

Here the evidence wholly fails to show that the rock clause in the contract increased the cost of the improvement. Accordingly, it cannot be said to render the contract void. The assessments levied to pay for the construction of the improvement cannot be challenged on account thereof. The trial court was right in sustaining the original assessments.

II. As above stated, the original assessments were insufficient to pay the cost of the improvement and on November 19, 1940, additional assessments were levied pursuant to section 7479, Code, 1939, which provides as follows:

"If the first assessment made by the board for the original cost or for repairs of any improvement is insufficient, the board shall make an additional assessment and levy in the same ratio as the first for either purpose, payable at the next taxpaying period after such indebtedness is incurred subject, however, to the provisions of section 7484."

Counsel states:

"It is the contention of the appellant that unless the additional assessment could be made payable at the next taxpaying period after the indebtedness was incurred for which the assessment is to be made the assessment could not be made at all."

Counsel cites numerous decisions of this court to the effect that a taxing statute must be strictly construed. This general principle of law is well established and has been recognized repeatedly by decisions of this court. However, no case is cited to us, and we have found none, which squarely decides the exact issue presented herein. Our former decisions on other statutes are persuasive only. And there are other rules of construction to be considered in addition to that of strict interpretation of a taxing statute.

It will be noted that section 7479 is made subject to section 7484, which provides for the payment of a drainage assessment in three or ten installments instead of in a lump sum. Accordingly, the legislature did not intend that the assessment should be collected in full at the next taxpaying period after the indebtedness is incurred. In the case of Whisenand v. Van Clark, 227 Iowa 800, 288 N. W. 915, we interpreted section 7484 in reference to an original drainage assessment. In that case the board provided for payment in seven installments. We recognized that the statute authorized three or ten installments but made no provision for seven. We held, however, that the error made the assessment voidable only by direct attack and

not void so as to be subject to collateral attack. In so holding, the inference is clear that the provisions relied upon herein are directory. They are not mandatory to the point of making strict cómpliance therewith essential to the power to act at all. The decision is persuasive against the contention of plaintiff-appellant herein.

In the case of Woodbury County Conference v. Carr, 226 Iowa 204, 209, 284 N. W. 122, we reviewed a number of our decisions on taxing statutes relating to the question whether a particular provision was directory or mandatory. The underlying philosophy of the rule that a requirement be held to be directory is quoted with approval from Hawkeye Lumber Co. v. Board of Review, 161 Iowa 504, 511, 143 N. W. 563, 566, as follows:

"As said, these various statutes were enacted to secure the orderly and prompt discharge of the duties by the various officials and bodies involved, and though the time defined should be regarded as a command and obeyed, yet it ought not to be held that a mere delay of a few days will invalidate any of these acts and defeat the purposes sought, and deprive the government of the funds essential to discharge its functions."

In the case above referred to the delay was but a few days. Here it was a number of years. However, long delays are to be expected in drainage deficiency-tax cases. The record herein well illustrates the necessity for the rule that the time of levying a deficiency assessment be directory rather than mandatory. The record shows that this project was completed on March 14, 1930. Had it been completed a few weeks sooner, it might be contended, under plaintiff's theory, that the assessment had to be made payable on the first of March 1930. Performance in accordance with such a strict interpretation of the statute might often be impossible. Also, in this case there was a very sharp dispute as to the amount of the cost of the improvement that might be collected. Eventually, litigation resulted and a settlement was made. A reduction of more than $15,000 in the cost of the improvement to the taxpayers was accomplished. The amount that had to be raised by the deficiency assessment was

not known until the settlement had been made. The assessment was levied promptly thereafter. It is not reasonable to assume that the legislature intended to tie the hands of this district and compel it to levy the deficiency assessment in 1930 or not at all when the amount to be raised thereby was not determined until May 9, 1939.

It is significant that in other cases before this court we have approved the levying of deficiency assessments to pay the balance of the original cost of the improvement years after the expense thereof was incurred. See Whitfield v. Grimes, 229 Iowa 309, 294 N. W. 346; Whitfield v. Sears, 233 Iowa 887, 10 N. W. 2d 564. Section 7479 also applies to levies to pay for repairs. We have sustained such levies though made years after the expense was incurred. See Coe v. Board of Supervisors, 229 Iowa 798, 295 N. W. 151; Board of Trustees v. Board of Supervisors, 232 Iowa 1098, 5 N. W. 2d 189. These cases serve to illustrate how far-reaching would be the effect of our decision should we interpret section 7479 as strictly as plaintiff contends we should. We see no occasion for doing so. We hold that the trial court was right in sustaining the deficiency assessments.

By reason of the foregoing, the decree is—Affirmed.

All JUSTICES concur.